## Mabel Curtis, Appellee, v. City of Paris, Appellant.
## Gen. No. 7,726.

1. MUNICIPAL CORPORATIONS—*not liable for acts of health board in governmental capacity.* The board of health of a city in erecting a barrier in a street to establish a quiet zone for the benefit of a sick person were endeavoring to carry out the regulations of the city for the public health and, therefore, the city was not responsible for any negligence of the board in the premises.

2. HIGHWAYS—*care by guest in automobile to avoid barrier in street.* Where a person riding in an automobile driven by another in the nighttime observed a rope stretched across the street and called the attention of the driver to it, there was evidence tending to show the exercise of reasonable care on her part for her safety.

3. HIGHWAYS—*when liability of city for dangerous street condition commences.* Wherever a dangerous condition exists in the street of a city, however it is caused, if the city has notice thereof, or of such facts and circumstances as would lead a prudent person, by the exercise of reasonable diligence, to such knowledge, and a sufficient time has elapsed to have given the city an opportunity to have remedied such dangerous situation, the city is liable for an injury resulting therefrom to one who is in the exercise of ordinary care for his own safety.

4. HIGHWAYS—*jury question as to notice by city of dangerous condition.* Generally, it is a question for the jury whether a city has had notice, either actual or constructive, of a dangerous condition in a street and whether the city was negligent in failing to remedy such condition.

5. HIGHWAYS—*sufficiency of evidence of negligence in allowing barrier at night without warning lights.* In an action for damages sustained by plaintiff when she was thrown from a car as the driver was avoiding a rope barrier placed across the street, where the evidence showed that the barrier was erected by the board of health to create a quiet zone; that the chief of police placed lighted red lanterns thereon at about 6 o'clock; that the barrier was torn down about 8 o'clock by an automobile striking

it but the city was not notified of that fact; that the rope was afterward replaced by someone not connected with the city and lighted red lanterns placed on it; that there were no lights on it when the accident in question occurred; and that there was a conflict as to how long they had been out before the accident, the court would not be warranted in disturbing the finding of the jury in favor of plaintiff.

Appeal by defendant from the Circuit Court of Edgar county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed June 10, 1924.

F. C. VAN SELLAR, for appellant.

WILBER H. HICKMAN, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

On the night of Labor Day, September 3, 1923, Mabel Curtis, the appellee, rode north on Marshall Street in the City of Paris in a Ford sedan driven by a friend, and sustained an accident for which she brought suit against the City of Paris and recovered a judgment for $500 and costs from which judgment an appeal has been perfected to this court.

Marshall Street in the City of Paris extends north and south and is a portion of the Dixie Highway which is a much traveled thoroughfare. Jasper and Newton Streets cross it at right angles, one square apart. On August 28, 1923, by order of the Mayor of the City of Paris, rope barriers were placed across Marshall Street on the north side of Jasper and the south side of Newton Streets attached to poles back of the curb. On this rope in the day time were suspended red and white flags about 18 inches long, with a quiet zone card in the center of the street. At night there hung from the rope two and sometimes three lighted red lanterns. On August 31, by order of the mayor, these barriers were removed, and about noon,

September 1, they were replaced by order of the board of health of the city. The reason for the barriers was the illness of a lady who resided in the closed-off square on Marshall between Jasper and Newton Streets.

The evidence is not particularly conflicting. The night was foggy. Appellee and the driver of the car testified they did not see the barrier until about 50 feet away when appellee called the attention of the driver of the car to the fact that there was a rope across the street. He then applied the brakes, swerved to the left, ran up over the curb, parking, sidewalk and into the adjacent lawn, where the car struck a tree and appellee and the driver were thrown out. Appellee was cut about the chin, lips, and left hand and had four teeth knocked loose.

That evening at six o'clock the chief of police had placed on this rope at Jasper Street two lighted lanterns filled with oil, with red globes, and saw that the red flags on the rope were in place. About eight o'clock the same evening some boys in a Ford car ran through the rope while the lanterns were lighted, and tore down the barrier. The city was not notified of this fact. Afterwards, the rope was replaced by someone, not connected with the city, and lighted red lanterns were placed on it, beside the flags. Appellee and four other witnesses testified that there were no lights on the rope when it was struck. There is some conflict in the testimony as to how long a time they had been out before the time of the accident.

It is contended by appellant that the barrier in question was not erected by the city, but by the board of health in its capacity of rendering a public service, and even in case of negligence in the discharge of the board's official duty, no action would lie against the city.

In *Evans v. City of Kankakee*, 231 Ill. 223, it is said: "The law is well settled that the police regulations

of a city are not made or enforced in the interests of the city in its private capacity but in the interests of the public, and that a city is not liable for the acts of its officers in attempting to enforce police regulations; (*Board of Trustees of Town of Odell v. Schroeder,* 58 Ill. 353; *Culver v. City of Streator,* 130 Ill. 238; *City of Chicago v. Williams,* 182 Ill. 135; *Craig v. City of Charleston,* 180 Ill. 154; *Frazer v. City of Chicago,* 186 Ill. 480; *Tollefson v. City of Ottawa,* 228 Ill. 134;) and police regulations, it has frequently been said, include the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public, and that all persons officially charged with the execution and enforcement of such police ordinances and regulations are, *quoad hoc,* police officers.''

The Board of Health of the City of Paris in erecting the barrier in question was endeavoring to carry out the regulations of the city for the public health and the city therefore was not responsible for any negligent acts of the board of health in the erection of the barrier nor for the obstruction of the street so far as the same was obstructed by the acts of the board of health, nor for any other acts or negligence of the board of health in the premises.

In *Johnston v. City of Chicago,* 258 Ill. 494, it is said:

''In considering the question of liability the authorities usually hold that it must be considered that a municipality acts in a dual capacity,—first, in exercising its governmental functions; and second, as a private corporation, enjoying powers and privileges conferred for its own benefit. When such municipal corporation is acting within its authority, in a ministerial character, in the management of its property, it is liable for the negligent acts of its employees although the work in which they are engaged will inure to the benefit of the municipality. On the other hand,

whether the municipality is exercising judicial, discretionary or legislative authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers. (2 Cooley on Torts,—3d ed.—1014; *City of Chicago v. Seben,* 165 Ill. 371; 20 Am. & Eng. Ency. of Law,—2d ed.—1197; Tiedeman on Mun. Corp., secs. 338, 349.) The mere fact that a particular work may incidentally benefit the public does not necessarily exempt the city for torts committed by its employees. (20 Am. & Eng. Ency. of Law,—2d ed.—1196.) Official action is judicial where it is the result of judgment or discretion. It is ministerial when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion. A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. *City of Chicago v. Seben, supra;* 4 Dillon on Mun. Corp. (5th ed.), sec. 1741.

"A purely charitable corporation is by the weight of authority held not liable for the torts or neglect of its servants in the performance of their duties in carrying on the work of such corporation. Neither is a city liable for the acts of its employees who are acting under the police power granted to such corporation. (2 Cooley on Torts,—3d ed.—1011; *Culver v. City of Streator,* 130 Ill. 238; *Parks v. Northwestern University,* 218 Ill. 381; *City of Chicago v. Williams,* 182 Ill. 135; *Evans v. City of Kankakee,* 231 Ill. 223.) So, also, a municipal corporation is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of said municipality for the public health and for the care of the sick and destitute. 4 Dillon on Mun. Corp. (5th ed.), sec. 1661; *Tollefson v. City of Ottawa,* 228 Ill. 134.''

In *Hanrahan v. City of Chicago,* 289 Ill. 400, it is said:

"A city is not liable for the negligent acts of its officers or employees who are acting under the police power granted to the city or who are endeavoring to carry out the regulations of the city for the public health and the care of the sick and destitute. The city is not liable for its officers' negligence while they are exercising judicial, discretionary or legislative authority conferred by its charter or while discharging their duties imposed solely for the benefit of the public. Where a municipal corporation is acting, within its authority, in a ministerial capacity in the management of its property or in the discharge of its duties in repairing or removing obstructions from streets, or is negligent in failing to discharge its duties of keeping its streets in repair and in safe condition for travel, it is liable for all injuries caused by such negligence when the party injured is exercising due care for his safety."

It is contended by appellant that the barrier having been torn down after it was erected by the city and re-erected by some outsider without notice to the city, the city was relieved from any liability. While the city is not liable for the negligent act of its officers and employees who are acting under the police power granted to the city, nor for the unauthorized acts of third parties in creating obstructions in the street, and in this case was not liable for any damages resulting from its erection or damages resulting from any negligence in the manner in which it was erected by an unauthorized person, yet it was the duty of the city to use reasonable care to keep its streets reasonably safe for ordinary travel thereon by persons using due care and caution for their own safety and to guard against accidents on the streets by the exercise of an amount of care commensurate with the known danger. (*Stedwell v. City of Chicago,* 297 Ill. 486.)

When approaching the barrier in question appellee

observed the same and called the attention of the driver of the car in which she was riding to its presence. This was evidence tending to show the exercise of reasonable care on her part for her safety and no question seems to be raised in the case but what at the time of the accident she was in the exercise of such care. It was therefore the duty of the city to have exercised reasonable care to keep the street in question reasonably safe for her while she was in the exercise of such care.

Where a dangerous condition exists in the street of a city, whether caused by the action of the city in the exercise of its police power, by unauthorized persons, or by the servants of the city acting in a ministerial capacity, if the city has notice of such dangerous condition or of such facts and circumstances as would by the exercise of reasonable diligence lead a prudent person to such knowledge, and a sufficient time has elapsed to have given the city an opportunity to have remedied such dangerous situation, the city is liable for an injury resulting from such dangerous situation to a person who is in the exercise of ordinary care for his own safety. *City of Chicago v. Stearns,* 105 Ill. 554.

Generally, it is a question for the jury whether a city has had notice either actual or constructive of a dangerous condition in a street, and it is also a question of fact whether or not the city was negligent in failing to remedy such dangerous condition.

In the present case the jury evidently found in favor of appellee upon these questions and under the evidence in the case we would not be warranted in disturbing their finding.

The judgment of the circuit court is affirmed.

*Affirmed.*