Bedtke v. City of Chicago, 240 Ill. App. 493.

---

**F. A. Bedtke, Appellee, v. City of Chicago, Appellant.**

**Gen. No. 30,632.**

1. MUNICIPAL CORPORATIONS—*cleaning of streets and alleys as action for local purpose rather that one under police power.* Where a city undertakes, although voluntarily and without exacting com-

pensation from the property owners particularly benefited, the cleaning of its streets and alleys, it acts in so doing for a local purpose and not in an exercise of its police power.

2. MUNICIPAL CORPORATIONS—*cleaning of streets and alleys as ministerial rather than governmental function.* The undertaking of a city to clean its streets and alleys, although carried out without exacting compensation from the property owners directly benefited, is an exercise of a ministerial function as distinguished from a governmental function.

3. MUNICIPAL CORPORATIONS—*application of principle respondeat superior to city in respect of street cleaning activities.* Where a city undertakes the ministerial function of cleaning its streets and alleys, it is responsible under the principle of *respondeat superior* for injuries resulting from the negligence of its servants doing such work.

Appeal by defendant from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed. Opinion filed May 5, 1926.

FRANCIS X. BUSCH, Corporation Counsel, for appellant; LAWRENCE J. FENLON and FRANK A. WRIGHT, Assistant Corporation Counsel, of counsel.

NEWTON R. GILMORE, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, F. A. Bedtke, claiming that the defendant, the City of Chicago, through the negligence of its servants, in the use of a portable incinerator in an alley back of the plaintiff's premises, caused the destruction by fire of certain personal property belonging to him, began a suit of trespass on the case in the superior court against the defendant, the City of Chicago, and after a trial before the court, without a jury, recovered a judgment in the sum of $2,225.17. This is an appeal by the City from that judgment.

The declaration consists of two counts. The first alleged that the plaintiff on September 15, 1922, was

Bedtke v. City of Chicago, 240 Ill. App. 493.

the lessee of 2013 W. Division Street, Chicago, where he conducted a general trucking business and stored certain merchandise of the value of $2,000, which property he guarded with appropriate care; that prior to September 15, 1922, the City had adopted the Cities and Villages Act of 1872 as its charter; that that charter not only delegated certain governmental powers to the City, but also empowered it, without compelling it, to undertake certain ministerial functions; that, among other things, the Act of 1872 authorized the city council to provide for the cleaning of its streets; that the city council, prior to September 15, 1922, created the department of public works, with a commissioner of public works, a superintendent and assistant superintendent of streets and had by ordinance fixed their duties and authorized them to employ laborers to perform the ministerial duties of cleaning the streets and alleys of the City; that the City had undertaken to exercise complete control of cleaning the streets and alleys of the City and thereby became bound to perform that duty—voluntarily assumed— in such a manner as not to injure the plaintiff's property; yet, the City, not regarding its duty and while in possession of the alley in question, through its employees engaged in cleaning it, did on September 15, 1922, negligently and wrongfully perform its ministerial duty of cleaning the alley in the rear of the property occupied by the plaintiff; that, through its employees, it collected waste papers and other combustible materials in the alley in the rear of plaintiff's place of business and negligently there set fire to them and negligently failed to watch or control the fire, so that, as a result, the plaintiff's place of business was set on fire and his tools, appliances, fixtures and merchandise were consumed.

The second count alleged somewhat similar facts to the first, but charged in addition that there was a city ordinance entitled "Bonfires in Streets," etc., which

provided: "Whoever is concerned in causing or making a bonfire, or sets fire to or burns any hay, straw, shavings or other combustible material in any street, alley or public place within the city, shall be fined not less than twenty-five dollars for each offense"; that the City, in burning the refuse as it did, was guilty of a violation of the ordinance, and in consequence liable for negligence.

On May 6, 1924, the City filed a general demurrer, and on March 14, 1925, it was overruled, and the City ordered to plead to the declaration. On March 23, 1925, the City filed a plea of the general issue. On April 30, 1925, the case came up for trial, and a jury was impanelled. On May 1, 1925, by agreement of the parties a juror was withdrawn, the jury discharged, and the cause continued to June 15, 1925. On June 23, 1925, the demurrer to the second count was sustained. On the same day, the following stipulation of facts was entered into:

"The City of Chicago, a Municipal Corporation, in September, 1922, employed through its department of streets, certain employes known as alley cleaners, and whose duty it was to go through the alleys in the particular section of the wards to which they were assigned by their immediate superiors, and gather from those alleys all waste matter which is inflammable, particularly paper and rubbish, and to place said material so gathered by them in a container which is provided for them by the City of Chicago, and which is in the form of a barrel-like structure made of heavy wire with meshes about one and one-quarter inches, having a cover of same material, and mounted on wheels, with a handle similar to a pushcart, and burn said material in said container in the alley from which said particular rubbish was gathered. The City does not derive any income or revenue from this work, no fee being charged any individual for said service.

"The aforesaid Bureau of Streets, which bureau is a regularly established part of the municipal government of the City of Chicago and is under the jurisdiction of the Department of Public Works, an executive department of the municipal government, in addition to other duties, has charge of the cleaning of streets and alleys of the City, including the removal and disposition of garbage, filth, litter, dirt, rubbish, ashes, manure, offal, swill and other materials and substances from the streets and alleys.

"In September, of the year 1922, one Christian Gulbranson was employed in said capacity by the City of Chicago, and, among the alleys assigned to his charge were an alley running east and west from Robey street to Hoyne avenue, and an alley running south from said east and west alley to Haddon avenue, in the block bounded by Robey street and Hoyne avenue on the east and west and by Division street and Haddon avenue, on the north and south, in the City of Chicago.

"On the 15th day of September, 1922, said employe was sent to said particular alleys above described by his immediate superior and gathered papers and rubbish, placed them in his incinerator and set fire to them, while said incinerator was standing a distance of from four to six feet from the rear door of a garage and warehouse situated at 2013 West Division street, Chicago, Illinois. After setting fire to the rubbish and paper contained in said incinerator, said employe went up and down the alley picking up other rubbish and papers, leaving said incinerator in the position above described, and, while so doing, fire was communicated from said burning incinerator to the rear door of the premises above mentioned, which fire burned practically all of the garage and warehouse, being a building fifty (50) feet wide by about seventy (70) feet deep, and destroyed all the contents of said building."

It was stipulated, also, that the fair and reasonable value of the plaintiff's property which was destroyed

by fire, was $2,225.17. Based upon the stipulation of facts above set forth, the learned trial judge found the City guilty and assessed the plaintiff's damages at the sum of $2,225.17. Motions for a new trial and in arrest of judgment were made by the City, and were overruled, and judgment entered in favor of the plaintiff and against the City for the above-mentioned sum.

At first blush, it would seem to be reasonable to hold that, where private property is destroyed by fire through the carelessness of a city employee in manipulating a portable incinerator of refuse gathered up and burned in the course of cleaning an alley for the City, there should be a right to recover damages commensurate with the loss. That would seem to be a matter of common sense and in accord with the general precepts of the law. But, the history of the liability of municipalities for negligence shows that in this State, as in many others, some seemingly arbitrary distinctions, usually not well defined, have been made between cases where the negligence of the municipality occurred while its servants were in the exercise of what is called the municipality's public and governmental functions, and cases where it occurred while they were in the exercise of the municipality's private corporate or ministerial functions, and that, generally, there is no liability in the former, but there is in the latter.

The following cases are illustrative of the subject: *Wilcox v. City of Chicago*, 107 Ill. 334; *City of Chicago v. Seben*, 165 Ill. 371; *Johnston v. City of Chicago*, 258 Ill. 494; *Hanrahan v. City of Chicago*, 289 Ill. 400; *Stedwell v. City of Chicago*, 297 Ill. 426; *Flannagan v. Bloomington*, 156 Ill. App. 162; *Curtis v. City of Paris*, 234 Ill. App. 157.

In the *Wilcox* case, where suit was brought to recover damages sustained by the plaintiff by reason of a collision between his carriage and a hook and ladder wagon of the City, through the alleged negligence of

the driver of the hook and ladder wagon while in the service of the City in saving property from destruction by fire, it was held, on the ground of public policy, that there was no liability. The court there said: "On turning to the reported cases of the courts of other States, we find a uniform line of decisions holding that cities are not liable for the negligent acts of the officers or men employed in their fire departments whilst in the discharge of their duty, thus creating an exception in this class of cases to the general rule of *respondeat superior."* Citing Dillon on Mun. Corp., 1st ed. sec. 774, and a series of cases from Massachusetts, New York, Connecticut, Iowa, Missouri and California.

In the *Seben* case, *supra,* the plaintiff having stepped into a sewer inlet at the corner of two streets and being injured thereby, brought suit against the City and recovered a judgment for damages which was affirmed. The court there said: "Municipal corporations will not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, or legislative, or *quasi* judicial character. But they are liable to actions for damages when their duties cease to be judicial in their nature, and become ministerial." Citing 2 Dillon on Mun. Corp., secs. 949, 832; and Tiedeman on Mun. Corp., sec. 324. And the court there proceeds to distinguish between judicial and ministerial action on the part of the City. The court said: "The adoption of a general plan of sewerage involves the performance of a duty of a *quasi* judicial character, but the construction and regulation of sewers and the keeping of them in repair, after the adoption of such general plan, are ministerial duties, and the municipality, which constructs and owns such sewers, is liable for the negligent performance of such duties." Citing Beach on Public Corp., sec. 766; *Johnston v. District of Columbia,* 118 U. S. 19; *Seifert v. Brooklyn,* 101 N. Y. 136.

In the *Johnston* case, *supra,* it was held that the City was liable for injuries caused by an employee of the city library, negligently driving a library automobile. That decision was based on the ground that the library was for the exclusive benefit of the City and the function being exercised was ministerial and not governmental. There the court said: "The mere fact that a particular work may incidentally benefit the public does not necessarily exempt the city for torts committed by its employees."

In the *Hanrahan* case, *supra,* where the plaintiff was injured as the result of a wooden awning, which extended out over a sidewalk, falling down and striking him, the court said: "Where a municipal corporation is acting, within its authority, in a ministerial capacity in the management of its property or in the discharge of its duties in repairing or removing obstructions from streets, or is negligent in failing to discharge its duties of keeping its streets in repair and in safe condition for travel, it is liable for all injuries caused by such negligence when the party injured is exercising due care for his safety." It further said: "A municipal corporation acts judicially when it selects and adopts a plan for the construction of a public improvement, but in carrying out such plan or in removing obstructions or dangers from its streets it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner." Citing *City of Chicago v. Seben,* 165 Ill. 371.

In the *Stedwell* case, *supra,* where a boy climbed up a lattice-work structure in a public street and was injured by touching a wire charged with electricity, it was held that in lighting its streets the City was not exercising a governmental function and that the City was "bound to know the dangers incident to lighting its streets with electricity, and to guard against accident by the exercise of a degree of care commensurate with the danger." Citing the *Johnston* case; *Hausler*

*v. Commonwealth Electric Co.,* 240 Ill. 201; *Rowe v. Taylorville Electric Co.,* 213 Ill. 318.

In the *Flannagan* case, *supra,* an owner of private property used as a home brought suit against the City for damages caused by the City making an obnoxious dumping ground of certain property nearby or contiguous to her home, and recovered a judgment. The court held that the dumping of refuse on the neighboring property was not an exercise of the police power for which there was no liability. Citing *City of Chicago v. Seben,* 165 Ill. 371.

In the *Curtis* case, *supra,* the court intimated that where a dangerous condition exists in the streets of a City, which is caused by the servants of the City acting in a ministerial capacity, the City may be liable for injuries resulting therefrom.

We think it becomes quite obvious that, in this State, cleaning a city alley by collecting the refuse and debris and burning it, as was done here, (1) was for a local city purpose and did not constitute an exercise of police power, and, further, (2) is as a matter of law, a ministerial function as distinguished from a governmental function, and, (3) as regards the negligence of a servant doing such work, the principle of *respondeat superior* applies and the City is liable. And applying those principles to the negligence and its result, which the evidence here shows, it follows, in our judgment, that the City is liable for the damages suffered by the plaintiff as the result of the destruction of his property by fire.

In our judgment, bearing in mind that the present ill-defined doctrine seems to have arisen from a misconception of early law, the ordinary principles of the law pertaining to torts ought to apply to a municipal corporation; in other words, such a corporation, like any other principal, should be liable for the torts of its agents, and the distinction between governmental and ministerial functions, used in determining the lia-

bility of a municipal corporation for negligence in affirmative conduct, should be abandoned. 24 Yale Law Journal 229; 4 Dillon, Mun. Corp. p. 3002.

"Injuries caused by negligence of municipal employees are proper items of expense to be borne by the community. For omission to perform public duties running to the community as a whole there should of course be no municipal liability to private individuals. But in the undertaking of an affirmative course of conduct it is immaterial that the duty being performed is a public one from which the municipality derives no profit. Liability should be based upon the exaction of the law that everyone, in the performance of an affirmative course of conduct, must at his peril measure up to a standard of due care." 34 Harv. Law Rev. p. 66.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.