Hildegarde Gebhardt, a Minor, by her Parent and Next Friend, David Gebhardt, Appellee, v. Village of LaGrange Park, Appellant.

Gen. No. 36,048.

Heard in the first division of this court for the first district at the June term, 1932. Opinion filed December 29, 1932. Rehearing denied January 13, 1933.

STEVENS, CARRIER & GRIFFITH, for appellant; GEORGE M. STEVENS and LEE W. CARRIER, of counsel.

FREDERICK A. GARIEPY and OWEN RALL, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, a minor, brought suit by her next friend against the Village of LaGrange Park, a municipal corporation, Marshall Field & Company, and Charles Smith to recover damages for personal injuries. Smith was defaulted. At the close of plaintiff's evidence the court directed a verdict in favor of Marshall Field & Co., and there was a verdict and judgment of $3,500 in plaintiff's favor against the Village and Smith, and the Village appeals.

The record discloses that about four o'clock in the afternoon of July 14, 1927, plaintiff, a girl about 13 years of age, together with a number of other girls of about the same age and a young lady who was their swimming instructor, were returning to the Village of LaGrange Park after swimming in a pool located some eight miles west of the Village. They were riding in an automobile driven by the defendant Smith when there was a collision between the automobile and a truck going in the opposite direction, belonging to Marshall Field & Co., and plaintiff was severely injured.

There is substantially no contradiction in the evidence; in fact the only evidence offered by the defendant Village was an ordinance of the Village specifying the duties of the village marshal or chief of police as he was called, and this ordinance was excluded by the court.

The facts disclosed by the evidence are, in short compass, that on May 4, 1925, the Village officials passed an ordinance establishing a playground and recreation board for the Village, to be composed of three mem-

bers to be appointed by the president of the Village, by and with the consent of the board of trustees. The members of the board were to serve without compensation and the board was authorized to adopt rules and regulations, as the members might deem proper, for the conduct of their work. The recreation board was given power to maintain and equip playgrounds and recreation centers within or beyond the corporate limits of the Village and the board was also empowered to employ play leaders, directors, supervisors, recreation superintendents and other officers and employees as they might deem proper, and the board had all the power conferred by the act of the legislature passed in 1921 and as later amended, by which villages were authorized to acquire, conduct and maintain public playgrounds and recreation centers in cities, towns and villages of less than 150,000 inhabitants. Chap. 24, par. 631 *et seq.*, Cahill's 1931 Statutes, p. 460. The ordinance further provided that the board might execute a comprehensive program "of leisure-time activities, physical, social and cultural, intended to benefit all residents of the community"; and that the trustees of the Village should annually levy and collect a tax to be designated "Playground and Recreation Tax," to be used in defraying the cost of the playground and recreation activities. Pursuant to the ordinance the president of the Village appointed three persons to constitute the playground and recreation board and the appointments were approved by the trustees of the Village and they entered upon their duties.

The evidence further shows that the recreation board provided a playground in the Village with a baseball diamond, horizontal bars and other equipment but no swimming pool, so that it was arranged to take the children to a pool some eight miles beyond the Village limits which was privately owned and operated by an individual in no way connected with the Village.

The defendant Smith was employed by the Village as a chauffeur and for about six weeks prior to the day plaintiff was injured, drove the children to the swimming pool and later brought them back. Some days he would take the girls and other days during the week the boys would be taken. Miss Simmons, a young lady, was the swimming instructor for the girls and was paid by checks signed by the three members of the recreation board of the Village. On the day in question the village marshal told Smith, the village chauffeur, to take the girls and Miss Simmons to the swimming pool. It was a rainy morning and Smith did not drive the truck usually used by the Village in taking the children, but used instead his own automobile. Six girls and the swimming instructor were taken in the automobile to the swimming pool in the forenoon. The girls took their lunch and each paid 25 cents to the person running the pool so that she might swim in the pool. After Smith had taken the girls to the pool in the morning he returned to the village and pursued his ordinary duties and, pursuant to arrangement, sometime about three o'clock he drove to the pool to bring the girls home. On his way back he was driving east on a country road known as Ogden avenue. There was a vehicle ahead of him going in the same direction, and as he endeavored to pass this to the left one of Field's trucks going in the opposite direction collided with the automobile, severely injuring plaintiff who was sitting on the left side in the rear of the automobile.

The defendant Village contends that the court erred in refusing to direct a verdict in its favor as requested on the ground that the Village in carrying out its recreation system was acting in a governmental capacity and was therefore not liable for the negligence of its servant.

It is the law in this State that a municipality is not liable for the negligence of its servants if the munici-

pality is acting in a governmental capacity at the time, but that a village is liable for the negligence of its servants if the municipality is acting in a ministerial capacity. And whether a municipality in the given case is acting in one or another of the capacities is a very difficult question to determine.

In *Roumbos v. City of Chicago,* 332 Ill. 70, where it was sought to hold the city liable for the negligence of its servant in burning a pile of rubbish in the street, and where he left his work for a short time and a child's clothing caught fire, as a result of which the child died, it was held that the city was liable. The court there said (p. 73): "This presents the real question in the case—whether the city is liable for the negligence of its employees engaged in cleaning the streets." And on p. 74, the court said: "The division of municipal functions into public and governmental on the one hand and private and corporate on the other is not well defined but is vague and indefinite. No definition of the terms has been declared which is of much practical value or 'which will precisely embrace torts for which a civil action will lie, in the absence of a statute declaring the liability against a municipal corporation.' . . . To determine whether there is municipal responsibility the inquiry must be whether the particular agents or servants for whose acts of negligence it is sought to hold the corporation are its agents and servants for the performance of a public duty imposed by law, or merely for the carrying out of private functions which are for its special benefit or advantage. (*Johnston v. City of Chicago,* 258 Ill. 494.)" And the court in further discussing the rule said that the rule's "application to the specific cases is often of great difficulty." And on page 76: "The grounds upon which the liability of the municipal corporation proper is usually placed are, that the duty is voluntarily assumed." And on page 77: "Cities become incorporated by the voluntary act of their in-

habitants, for the benefit of the territory incorporated and the people residing within the corporation. By their incorporation they receive certain powers and privileges and assume certain duties and obligations. So far as they are exercising these privileges and duties in the interest of the general public (the people of the State at large) they represent the sovereignty of the State and are not liable for the negligence of their officers and agents in the performance of such duties, but so far as their acts concern merely the interest of the particular locality and its inhabitants they are responsible, the same as private corporations.''

In the instant case the Village voluntarily created the recreation board and gave it certain powers and duties to perform. All that was done was for the benefit of the inhabitants of the Village and not for the people of the State at large. It is admitted by counsel for the Village that had the board of recreation of the Village seen fit to do so, it might have constructed or obtained and maintained a swimming pool beyond the limits of the Village. The recreation board or the Village, in transporting the girls to the swimming pool, was doing so for the benefit solely of the residents of the Village, and under the rule announced in the *Roumbos* case we think the Village was acting in its private capacity at the time of the accident and is therefore liable for Smith's negligence. As a general proposition a municipality ought to be liable for the torts of its employees the same as any other corporation' or individual. In *Bedtke v. City of Chicago,* 240 Ill. App. 493, we said: ''In our judgment, bearing in mind that the present ill-defined doctrine seems to have arisen from a misconception of early law, the ordinary principles of the law pertaining to torts ought to apply to a municipal corporation; in other words, such a corporation, like any other principal, should be liable for

the torts of its agents, and the distinction between governmental and ministerial functions, used in determining the liability of a municipal corporation for negligence in affirmative conduct, should be abandoned. 24 Yale Law Journal 229; 4 Dillon, Mun. Corp., p. 3002.''

But the Village further contends there was no proof that the recreation board acted as a body at a regular meeting in connection with the swimming pool and that it was necessary that this be shown, and that there was the same lack of evidence in showing that Smith was authorized by the board to transport the girls to the swimming pool; that these matters can be shown only by the records of the recreation board and not by parole. We think this contention is unsound. There is nothing in the statute authorizing the creation of recreation boards, nor is there anything in the Village ordinance which requires that the action of the board be preserved by written record. In these circumstances we think that what was said and done in the premises might be shown by parole.

Complaint is also made that the court excluded an ordinance of the Village offered by the defendant which specified the duties to be performed by the Village marshal. The testimony was that the Village marshal had instructed Smith to take the girls to the swimming pool on the day in question, and the contention is that the ordinance would have shown that the marshal was not authorized to perform any such function. We think there was no error in the ruling of the court. It was not claimed that the Village marshal, in telling Smith to take the girls to the swimming pool on the day in question, was acting in his official capacity. The business of the Village, as is often the case, was performed more or less informally. The evidence shows that the members of the recreation board employed and paid Miss Simmons and gave instructions

to take the girls to the swimming pool, and we think it clear that the Village marshal was carrying out instructions given to him. Moreover, the evidence is that Smith had taken the girls a number of times to the swimming pool over a period of about six weeks prior to the time in question, and it is obvious he was acting for the recreation board in the interest of the Village.

Complaint is also made that the court erred in refusing to give certain instructions submitted by the Village. Counsel for plaintiff contend that it cannot be ascertained from the record which side submitted the instructions given or refused. This contention must be sustained. The record states that the court, "at the request of counsel," gave the following instructions: then follow the given instructions. The bill of exceptions then recites the court refused to give the following instructions. Then follow the refused instructions; but it is impossible to say which side offered any of the instructions. But in any event we think there was no error in refusing the instructions claimed to have been offered by the Village. The first refused instruction said: "The court instructs the jury that the Village cannot be estopped by an act of its officers, agents," etc., beyond the authority conferred upon them; that there could be no estoppel arising against a municipal corporation from an act of the municipal authorities which was done without authority of law; that a municipal corporation was bound by the acts of its officers or agents only when they kept within the limits of the chartered authority and that matter outside of such authority "is *ultra vires* and void, and the corporation is not estopped," etc. Obviously this instruction would not enlighten the jury. There was no explanation of the terms "estoppel" or *"ultra vires."* Moreover, it was an abstract proposition of law and it is never error to refuse such an instruction. Refused instruction 18 was also ab-

stract in form and therefore it was not error to refuse it.

Complaint is made to the giving of the instruction at the request of plaintiff by which the jury was told that to entitle plaintiff to recover she was only required to make out her case "by a mere preponderance of the evidence." This instruction was erroneous. *Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164. But it is not every error in instructions that will warrant the court in reversing the judgment. No argument is made that the evidence did not show the negligence of Smith at the time of the collision and there was no evidence to the contrary. In these circumstances, we think the instruction did not prejudicially affect the Village.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.