Helena McKeown, Appellee, v. City of Chicago, Appellant.

Gen. No. 42,555.

Opinion filed June 16, 1943.

BARNET HODES, Corporation Counsel, for appellant; J. HERZL SEGAL and BARNEY FAGEN, Assistant Corporation Counsel, of counsel.

EDGAR A. JONAS and FREDERICK C. JONAS, both of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Helena McKeown, against defendant, City of Chicago, to recover damages for personal injuries alleged to have been sustained by her by reason of the city's negligence. The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at $1,500. Defendant's motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial having been overruled, judgment was entered on the verdict. Defendant appeals.

On the evening of January 2, 1940 Mrs. Matson, the wife of the owner of the building in which plaintiff lived, gave permission to members of the Fire Department of the City of Chicago to run a line of hose through the passageway that extended alongside said building and from the front sidewalk to the alley in the rear of the Matson lot, for the purpose of flooding a vacant lot across said alley for ice skating purposes. In the process of flooding said vacant lot the firemen used a defective hose and water leaked therefrom onto the concrete sidewalk near the garage at the rear of the lot. The temperature was around zero at the time and the water that leaked from the hose froze quickly. For some time prior to the evening of January 2, 1940 there had been no ice or snow on the ground. The temperature continued around zero for the next two days, January 3 and January 4, 1940, and there was a light fall of snow during the night of January 3, 1940, which covered the ice on the sidewalk in question. The Matson family lived on the first floor of

their building and plaintiff and her family resided on the second floor. Plaintiff, who had not used the concrete walk to the alley since the hose had been on the premises, proceeded to walk over said sidewalk on her way to and through the alley to do some shopping about 9 a. m. January 4, 1940. As heretofore stated there had been a light fall of snow the night before which covered the ice and, when plaintiff stepped on the ice, she slipped and fell and received the injuries complained of. Matson, the owner of the premises was also made a defendant but the case was dismissed as to him during the course of the trial.

Defendant's theory as stated in its brief is that ''in flooding a vacant lot for ice-skating purposes it was performing a governmental function and therefore was not liable for damages caused by the negligence of its servants and that in any event the defendant is not liable for injuries sustained on private property where the owner had failed to remove the unsafe condition having notice of same.''

Plaintiff's theory is that ''the defendant was not engaged in a governmental function in the flooding of a vacant lot, but in so doing it was acting in a purely ministerial and proprietary manner''; that ''the act of the defendant in going upon the property of the defendant Matson and causing a dangerous condition thereon, whereby plaintiff was injured, was the proximate cause of plaintiff's injury for which defendant is liable''; that ''defendant created a nuisance in allowing the water to escape from a leaky hose laid across the Matson property, and that it is liable to the same extent that a private corporation or individual would be for damages to any person suffering a special injury''; and that ''it is no defense for the defendant to claim that the codefendant Matson should be liable where a dangerous condition was created by the affirmative act of the defendant, City of Chicago.''

In view of the nature of the points urged by defendant for reversal of the judgment, it must be assumed that plaintiff was free from contributory negligence and that the city and its servants were guilty of the negligence charged.

Defendant first contends that "a municipal corporation is not liable, as a matter of law, for the negligence of its servants in the discharge of their duties in providing free ice-skating privileges through flooding vacant lots pursuant to ordinance, such acts being purely governmental functions performed solely for the public health and benefit." Immediately following the recital of this contention this statement is found in defendant's brief:

"The flooding of the vacant lot by the fire department was done under an order issued by the Mayor of the City of Chicago by virtue of the following ordinance:

"Chap. 185, Par. 15 (1939), Municipal Code of Chicago—

"The mayor is duly authorized and empowered, from time to time, as he in his discretion may see fit, to permit the use of water from the city hydrants, free of charge, for the purpose of flooding vacant property, subject to the consent of the owner or owners of such property, where it may be desired to use such property when so flooded for the purpose of skating; provided, that no charge shall be made to any person for the privilege of skating on property so flooded."

There is nothing complicated or ambiguous about this ordinance and we are unable to find any provision or language therein which either expressly or impliedly authorized the mayor to order, direct or permit any official or employee of the city to provide in the city's behalf recreational facilities in the form of ice skating on vacant property not owned by the city. The ordinance merely authorized the mayor in his discretion to permit the use of water from city hy-

drants, without charge, by persons who applied for such use for the purpose of flooding vacant property for ice skating purposes, if they secured the consent of the owner or owners of such vacant property and if they made no charge for the privilege of skating thereon. The very language of the ordinance excludes even an inference that the city contemplated engaging in any governmental function thereunder. If it was intended by this ordinance that the city itself should establish and operate ice skating facilities on private property, there would have been no occasion or necessity for issuing permits to private citizens entitling them to have the vacant property flooded. Neither would there have been any occasion for requiring the applicants for such permits to secure the consent of the owners of said property or for prohibiting those to whom permits were issued from charging for the privilege of ice skating. In the instant case the permit for the use of water from city hydrants was granted by the mayor to a private citizen, one Morgan McNamara, presumably upon his proper application therefor, a copy of said permit or order was forwarded by the mayor to the fire commissioner, who transmitted same to the battalion chief in whose district the vacant lot in question was located, and city firemen were assigned by the battalion chief to flood the lot. It is not contended that while the members of the fire department were flooding this lot they were performing any of their regular duties as city firemen.

This statement is found in defendant's brief:

"In this case the city undertook to provide a means for the general public, without limitation, to enjoy the benefits of a skating pond close to the neighborhoods where no such facilities existed before. The situation clearly falls in the analogous classifications relating to parks, playgrounds, swimming pools, wading beaches, beaches, and the like, where it has been

held that the creation and operation of such facilities are governmental functions and not proprietary.''

There might be some force to this argument if the situation here were at all analogous to any of the classifications mentioned. But it is not. The cases cited by defendant in support of its foregoing statement, and it would serve no useful purpose to discuss them, concerned public swimming pools, parks and frozen ponds in parks that were used for ice skating. The elements of creation and operation of a recreational facility by a municipality were present in each case cited. Not so here. It is not even claimed that the city operated and maintained the ice skating facility involved herein. What is the fact as to who planned, created and established it? Certainly not the city. All that the city claims to have done was to supply the water. It is a matter of common knowledge that it requires more than the mere pouring of water into a vacant lot to create a facility for ice skating. If the water were poured into the vacant lot without previous preparation for its reception and retention its flow would be uncontrolled and it would only mean time, effort and water wasted. Since the firemen succeeded in the instant case in flooding the vacant property or so much thereof as the skating facility was to occupy, it is reasonable to infer that a basin had been previously formed by erecting a ridge of earth or some other material around that portion of the lot that was to receive the water intended to be frozen. Thus it was the person to whom the permit was issued or somebody in his behalf who actually established what was to serve as an ice skating facility, and the city merely supplied the water to fill the basin. It is of course true that the ice skating facility could not have been completed without water but it is also true that McNamara received from the mayor the order for the use of the water and pursuant to such order the city firemen supplied it.

The sole basis for defendant's contention that its servants were performing a governmental function in their use of the hose is that they were flooding and did flood the vacant lot which was to be used as an ice skating facility. It is stressed that the city flooded this lot for the use of the general public. While the public ultimately had the use of the water, when frozen, for ice skating, the fact remains that the city did not supply the water on its own initiative or on its own account to create and operate an ice skating facility. Under the terms of the foregoing ordinance and under the order issued by the mayor as authorized by that ordinance, the city supplied the water to McNamara who made the application for the use of same, to flood a basin constructed by him or under his direction in the vacant lot to be used as an ice skating facility when the water froze sufficiently. We hold that the furnishing of the water was merely an incident to the grant of the use of the water from "city hydrants . . . free of charge," and that in any event, since the water was furnished to a private citizen to enable him to establish an ice skating facility, it could not possibly be said that the city firemen who operated the hose were engaged in the performance of a governmental function.

It is next contended that "The defendant, a municipal corporation, is not liable for injuries to a tenant caused by slipping on ice formed in a private passageway where the landlord had notice of the operations of the city's servants and the effect of their acts."

Pertaining to this contention it is stated in defendant's brief that "the only basis upon which liability can be urged is that the city owes a duty to keep private walks in a reasonably safe condition." Plaintiff urges no such theory of liability upon the part of the city. What plaintiff does assert is that the city having requested and been granted the use of the Matson premises it was its duty to exercise reasonable care

in its use of such premises so as not to injure persons lawfully thereon and that it was bound to leave the premises in a reasonably safe condition after using same. The employees of the city were guilty of affirmative negligent conduct in knowingly permitting water to leak from the defective hose onto the concrete sidewalk on Matson's lot where it was bound to freeze almost instantly under the existing weather conditions. The city therefore created an unsafe and dangerous condition which might well result in injury to persons rightfully upon the premises unless it was removed. Since the city's failure to remove the dangerous condition created by the affirmative negligent conduct of its servants and since said condition was the proximate cause of the injury to plaintiff, who was free from contributory negligence and rightfully upon the premises, we fail to see how the defendant can escape liability. There is no merit in the claim of the city that it was the sole duty of the owner of the premises, who had notice of the dangerous condition, to remove same. It is sufficient answer to this contention to state that the city may not avoid its liability simply because the owner of the property may also have been liable.

Everyone, including municipalities, is bound to exercise due care in the performance of an affirmative course of conduct. In *Bedtke v. City of Chicago*, 240 Ill. App. 493, quoting from the Harvard Law School Review, the court said at p. 502:

" 'Injuries caused by negligence of municipal employees are proper items of expense to be borne by the community. For omission to perform public duties running to the community as a whole there should of course be no municipal liability to private individuals. But in the undertaking of an affirmative course of conduct it is immaterial that the duty being performed is a public one from which the municipality derives no profit. Liability should be based upon the exaction of the law that everyone, in the performance of an af-

firmative course of conduct, must at his peril measure up to a standard of due care.' 34 Harv. Law Rev. p. 66.''

For the reasons stated herein the judgment of the superior court of Cook county is affirmed.

*Affirmed.*

FRIEND and SCANLAN, JJ., concur.