FOSS *v.* CITY OF LANSING.

MUNICIPAL CORPORATIONS—NEGLIGENCE — MUNICIPALITY LIABLE IF
PROFIT ACCRUED ALTHOUGH ENGAGED IN A GOVERNMENTAL FUNC-
TION.

> Where there is an incidental profit to a municipality in
> collecting and disposing of garbage, by feeding it to hogs,
> it is liable for the negligence of its employee in operating
> a truck while engaged in collecting such garbage, although
> in so doing the municipality is performing a governmental
> function.

Error to Ingham; Carr (Leland W.), J.    Submitted
October 14, 1926.    (Docket No. 62.)    Decided April
1, 1927.

Case by Catherine Foss against the city of Lansing
for personal and other injuries.    Judgment for de-
fendant on a directed verdict.    Plaintiff brings error.
Reversed.

*A. M. Cummins* and *Pulver & Bush,* for appellant.

*D. G. F. Warner,* City Attorney, for appellee.

BIRD, J.    Plaintiff in her declaration alleges that
on the 13th day of November, 1925, a city employee
driving a city truck negligently ran into her auto-
mobile in which she was riding on the public highway,
and that as a result thereof she was greatly injured
and her automobile was greatly damaged.    The de-
fendant pleaded the general issue and gave notice
thereunder that it would show that said employee was
engaged in performing a governmental function when
said collision occurred, and by reason thereof defend-
ant was not liable for the negligent acts of its servants.

Municipal Corporations, 28 Cyc. p. 1263; 39 L. R. A. (N. S.)
649; 14 A. L. R. 1475; 32 A. L. R. 988; 4 R. C. L. Supp. 1310;
6 R. C. L. Supp. 1162.

The trial court took defendant's view of the transaction and directed a verdict for it. Plaintiff assigns error.

In the proofs it appears that the city council submitted the following resolution to the vote of the electors in 1916:

"Shall a municipal garbage collection service be inaugurated and conducted by the city of Lansing, the initial cost of equipment not to exceed $10,000 as prescribed by resolution of city council of said city of Lansing adopted October 2, 1916, the maintenance of such garbage collection service to be defrayed by general taxation."

This resolution was adopted by the electors on the 7th day of November, 1916. In pursuance of the authority therein given, the city council, on the 4th day of June, 1917, adopted the following ordinance:

"The cost of the collection and disposal of the garbage of the city of Lansing, except for can service as hereinafter provided, shall be paid from the general city funds; the city shall provide the garbage cans or containers required by ordinance, and the superintendent of garbage shall collect, in advance, from the users of such cans, a service charge to help pay the cost and maintenance of the same as follows: $1.00 for the period of any fiscal year, provided, that the service charge for the balance of any fiscal year after November 1, shall be but fifty cents."

In order to carry out the resolution adopted by the electors the council purchased a farm five miles west of the city and experimented with different methods of disposing of the city garbage. It finally settled on the plan of raising and purchasing hogs and feeding the garbage collected from the city to them, and when they were fit for the market disposing of them. It was while engaged in conveying garbage cans that the city truck collided with plaintiff's automobile. It was

conceded on the argument that the service charge of
one dollar for the can and the profit arising from
feeding the hogs helped to reduce the cost of garbage
disposal.

It is insisted upon the part of the city attorney that
in disposing of the city garbage it was performing a
governmental function, and, therefore, was not liable
for the negligent acts of its servants.    Plaintiff's
counsel were inclined to, and did, concede that it was
a governmental function, but they insist when a govern-
mental function is performed with an incidental profit
that the city is not entitled to the exception.    Under
these contentions it will be unnecessary to discuss the
question as to whether the city was engaged in per-
forming a governmental function in disposing of the
garbage.    It is conceded that the city made some
profit which helped to reduce the cost of disposal.    The
question then is,  Did the fact that there is an in-
cidental profit in the disposal of the garbage deprive
the city of the exemption claimed?

Many cases are called to our attention from other
jurisdictions, but we think this question may be de-
termined from our own decisions.

In *Rowland* v. *Kalamazoo Sup'ts of Poor*, 49 Mich.
553, suit was begun by plaintiff to recover damages
for certain wrongful acts of defendants in communicat-
ing a contagious disease to his drove of hogs.    The
defendants sought to avoid the consequences of their
acts by the fact that they were engaged in performing
a governmental duty, and, therefore, were not liable,
but the court held them liable.    The superintendents
were there engaged in farming, which lessened the
cost of the care to the poor.

In *Ostrander* v. *City of Lansing*, 111 Mich. 695,
plaintiff, an employee, brought suit against the city
to recover for injuries which he received by reason
of the caving in of a sewer.    The city defended on

the ground that it was engaged in a governmental work. The court agreed that the city was engaged in a governmental work, but because the charter of the city of Lansing authorized them to make some charge for the use of the sewer the court held that the city was liable on account of the following provision:

"The council may charge and collect annually, from persons whose premises are connected by private drains with the public sewers, such reasonable sum, not exceeding two dollars per year, as they may deem just, in proportion to the amount of drainage through such private drain."

The same distinction is made in *Hodgins* v. *Bay City,* 156 Mich. 692. The wires of telephone and electric plants were fastened to the same pole. An employee of the telephone company was injured by the negligence of the electric light company which was operated by the city. The court held that the city was not entitled to the exemption, saying in part:

"We are, therefore, of the opinion that the municipality, in furnishing electric light, is discharged from liability for the negligence of its officers, agents and employees, when furnishing the service for lighting its public streets, public places and buildings, and that it is liable for such negligence in furnishing light to its inhabitants for remuneration."

An instructive case outside of the State will be found in *Libby* v. *City of Portland,* 105 Me. 370 (74 Atl. 805, 18 Ann. Cas. 547), also reported in 26 L. R. A. (N. S.) 141.

See, also, *Columbia Finance & Trust Co.* v. *City of Louisville,* 135 Ky. 570 (122 S. W. 860, 25 L. R. A. [N. S.] 88); note to *Harris* v. *District of Columbia,* 14 A. L. R. 1473.

Whatever the holdings may be elsewhere, we are of the opinion that the rule in Michigan is that, if a municipality is engaged in a governmental work with

an incidental profit, it is liable the same as a private corporation would be.  With this view, the judgment must be reversed and a new trial granted, with costs of this court to plaintiff.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.