Harriet Schmidt, Appellee, v. City of Chicago,
Appellant.

Gen. No. 38,197.

Opinion filed April 7, 1936.

WILLIAM H. SEXTON, Corporation Counsel, and ALEX-
ANDER M. SMIETANKA, City Attorney, for appellant;
LIONEL J. BERG, Assistant City Attorney, of counsel.

KAHN & KAHN, of Chicago, for appellee; HARRY A.
KAHN and IRVING K. RUSS, of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion
of the court.

This is an action brought by plaintiff, Harriet
Schmidt, against defendant, City of Chicago, for in-

juries sustained through the alleged negligence of defendant's employee in the operation of a truck hauling garbage-laden trailers to the city incinerator. Upon the jury's verdict judgment was entered against defendant for $1,250. This appeal followed.

Plaintiff's declaration consisted of eight counts, of which those numbered 2, 4, 6, 7 and 8 were dismissed at the close of her case. Count one alleges in substance that on June 29, 1933, plaintiff was a passenger in an automobile proceeding in a southeasterly direction on Elston avenue, a public highway, in Chicago, at or near its intersection with Division street, and was in the exercise at all times of due care, caution and diligence for her own safety; that, pursuant to its powers and duties, defendant, by its duly authorized agents, servants and employees, was possessed, had charge and control of and was operating in and about its private and corporate business, a certain motor vehicle, commonly known as an auto truck, with trailers attached thereto, for transporting and carrying away garbage and other refuse; that such truck with attached trailers was being driven in a northwesterly direction upon Elston avenue aforesaid at or near its intersection with said Division street; and that defendant, by and through its agents, employees and servants, in utter disregard of its duty, so carelessly, negligently, wrongfully and improperly drove said motor truck and trailers that same were caused to and did run into and collide with an automobile in which plaintiff was riding as a passenger, causing her to sustain severe injuries as a result thereof. This count also set forth in *haec verba* statutory notice and alleged service of same on the mayor, city attorney, corporation counsel and city clerk of the city of Chicago.

The third count is identical with the first except that the negligence charged was driving at a high, dangerous, excessive and unreasonable rate of speed.

The fifth count is also identical with the first except that the negligence charged was the violation of section 40 of the Motor Vehicle Act concerning the duty of the driver of a vehicle to keep to the right of the center line of the street.

The facts so far as they are essential to a consideration of the issues involved are that on June 29, 1933, plaintiff was a passenger sitting in the rear seat of a Cadillac sedan owned and driven by her brother, Leo Blockus; that seated in the rear seat with her was her brother-in-law, Walter Pallacki, and Matthew Scarbuck sat in the front seat to the right of the driver; that it had commenced to rain about 10 minutes prior to the accident; that Blockus was driving the car in a southeasterly direction on the west side of Elston avenue, immediately to the west of the southbound street car tracks; that, as he approached within 300 feet of the intersection of Elston avenue and Division street, a truck coming from the east on Division street and drawing three trailers being used by the city of Chicago to remove garbage turned into Elston avenue to proceed in a northwesterly direction; that, as the truck and trailers completed the turn, the last trailer skidded west across the width of Elston avenue and struck the car in which plaintiff was riding just as the driver, Blockus, had swerved into a gasoline station driveway to avoid being struck by the skidding trailer; that the truck and trailers continued northwesterly on Elston avenue to Blackhawk street; that the driver of a Ford truck, who had witnessed the accident, together with Pallacki, followed the truck and trailers to the point where they stopped at Blackhawk street and informed the driver of the accident, whereupon he turned around and went back to the scene of the collision; that plaintiff, who was rendered unconscious by the collision, was removed from the car and taken to St. Mary's Hospital; that the street was very slippery

at the intersection of Elston avenue and Division street; that, as a result of the accident, plaintiff sustained injuries which compelled her to remain at the hospital one week and at home for two weeks; and that she has suffered headaches and dizzy spells ever since.

The contentions of defendant which are seriously urged and which are presented for our determination are (1) that in the removal and disposition of garbage by the operation of trucks and trailers, the city of Chicago was exercising its police power to protect the public health and suppress disease, which is a governmental function, and that therefore it could not be held liable for the negligence of the driver of its truck and attached trailers; and (2) that the statutory notice to the city of plaintiff's claim was fatally defective in that it did not correctly state the attending physician's address.

Plaintiff's theory is that in removing and disposing of garbage the municipality was engaged in a corporate or quasi-private function and is liable for the negligence of its employees; and that the notice of her claim, which she served upon the city through its officers, was in substantial compliance with the statutory requirements.

As to defendant's first contention, while our Supreme Court has not, in so far as we have been able to ascertain, passed upon the specific question of the liability of a municipality for the negligence of its servants and employees in the removal of garbage, we think that the rule established in this State imposing liability on municipalities for the negligence of their employees and servants in the exercise of analogous and kindred functions is applicable as well to the removal and disposition of garbage.

In the recent case of *Wasilevitsky v. City of Chicago,* 280 Ill. App. 531, where one of three garbage-laden trailers attached to a truck owned and operated by the

city of Chicago struck an automobile and injured Wasilevitsky, the precise question raised in the instant case was before the court and was determined adversely to the city in a well considered opinion written by Justice O'Connor. We are in full accord with the views expressed therein, and quote at length from that opinion:

"Whether the City was acting in a governmental capacity at the time in question, in which case there would be no liability, or whether it was acting in a ministerial capacity, in which case there would be liability, is a question not free from difficulty. Somewhat similar questions have been before the courts of this country on numerous occasions and the opinions and decisions are irreconcilable. And as pointed out by this court in *Bedtke v. City of Chicago,* 240 Ill. App. 493, we think the reason for such diversity of opinion has 'arisen from a misconception of early law, the ordinary principles of the law pertaining to torts ought to apply to a municipal corporation; in other words, such a corporation, like any other principal, should be liable for the torts of its agents, and the distinction between governmental and ministerial functions, used in determining the liability of a municipal corporation for negligence in affirmative conduct, should be abandoned. 34 Yale Law Journal, 229; 4 Dillon, Mun. Corp., p. 3002.

" ' "Injuries caused by negligence of municipal employees are proper items of expense to be borne by the community. For omission to perform public duties running to the community as a whole there should of course be no municipal liability to private individuals. But in the undertaking of an affirmative course of conduct it is immaterial that the duty being performed is a public one from which the municipality derives no profit. Liability should be based upon the exaction of the law that everyone, in the performance of an af-

firmative course of conduct, must at his peril measure up to a standard of due care.'' 34 Harv. Law Rev., p. 66.'

''In the *Bedtke* case we held that the City of Chicago was liable for the negligence of its servants in the use of a portable incinerator in an alley back of plaintiff's premises which caused the destruction by fire of certain personal property belonging to plaintiff. Certiorari was denied by the Supreme Court (241 Ill. App. XV). In that case we discussed a number of authorities, among them *Johnston v. City of Chicago*, 258 Ill. 494, in which it was held that the City was liable for an injury sustained by Johnston through the negligence of the driver of an automobile used to deliver books from the public library. The court there said (p. 497): 'Counsel for appellant insist that the City of Chicago, in establishing and carrying on a public library, is simply exercising a public or governmental function as distinguished from a strictly municipal function, and therefore it is not liable for the negligent acts of its employees . . . (499, 500). The organization of this public library is for the exclusive benefit of the territory of the City of Chicago and not for the State at large. It has been organized by the people of that city, through their proper representatives, voluntarily, and the duties to be performed have not been thrust upon the people of said city *nolens volens*. . . . When a city under no obligation to light its streets voluntarily undertakes to do so, it has been held liable for negligence in the management of its corporate property when used for such purpose.' And continuing the court said (p. 501): 'In most jurisdictions in this country, however, a municipality is liable for failure to keep its streets in safe condition for public use. . . . This is the rule, as we have seen, in this State.'

''In *Hanrahan v. City of Chicago*, 289 Ill. 400, plaintiff was injured as a result of a wooden awning, which

extended over the sidewalk, falling and striking him. It was held that the City was acting in its ministerial capacity in repairing or removing obstructions from the street and for any negligence in this respect it was liable. In that case the court discussed a number of authorities and said (p. 405): 'Where a municipal corporation is acting, within its authority, in a ministerial capacity in the management of its property or in the discharge of its duties in repairing or removing obstructions from streets, or is negligent in failing to discharge its duties of keeping its streets in repair and in safe condition for travel, it is liable for all injuries caused by such negligence when the party injured is exercising due care for his safety. *Johnston v. City of Chicago,* 258 Ill. 494.'

" 'A municipal corporation acts judicially when it selects and adopts a plan for the construction of a public improvement, but in carrying out such plan or in removing obstructions or dangers from its streets it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. (*City of Chicago v. Seben,* 165 Ill. 371.)'

"In *Roumbos v. City of Chicago,* 332 Ill. 70, the City was held liable for the death of a child which was caused by its clothing having caught fire from a fire set by a street cleaner to a pile of rubbish he had negligently left burning without watching it. The court there said (p. 74): 'The division of municipal functions into public and governmental on the one hand and private and corporate on the other is not well defined, but is vague and indefinite. No definition of the terms has been declared which is of much practical value or "which will precisely embrace torts for which a civil action will lie, in the absence of a statute declaring the liability against a municipal corporation." . . . It has been said that all that can be done with safety is to determine each case as it arises.' And continuing said (p. 75): 'The reason and essence of this rule is

clear and easily to be understood, but its application to the specific cases is often of great difficulty. . . . (p. 76.) The grounds upon which the liability of the municipal corporation proper is usually placed are, that the duty is voluntarily assumed and is clear, specific and complete, and that the powers and means furnished for its proper performance are ample and adequate'; that if the work done was for the benefit of the 'general public (the people of the State at large)' there was no liability 'but so far as their acts concern merely the interest of the particular locality and its inhabitants they are responsible, the same as private corporations. . . . ''The rule of law is a general one that the superior or employer must himself respond civilly for the negligence or want of skill of his agent or servant in the course or line of his employment by which another who is free from contributory fault is injured.'' (2 Dillon on Mun. Corp., sec. 968.) The application of this rule to municipal corporations in cases of torts by their employees and servants tends more to the securing of justice than the release of the corporations from the results which follow for private corporations or individuals.'

"In *Gebhardt v. Village of LaGrange Park,* 268 Ill. App. 556, we held that the Village was liable for injuries suffered by a child through the negligence of the servant of the Village in driving an automobile which was used to transport children from the Village to a swimming pool located about seven miles outside the Village, which pool was being operated privately by a man and his wife. The basis of our decision was that since what was done by the Village was for the benefit of the inhabitants of the Village and not for the people of the State at large, the Village, in transporting the children to and from the swimming pool, was not acting in its governmental capacity. This holding was wrong. *Gebbardt v. Village of LaGrange Park,* 354 Ill. 234. One of the reasons for the reversal by the Su-

preme Court seems to have been that transporting the children to and from the pool was not specifically limited to the children of the Village. The court there said (p. 239): 'Among the aims of government are those to foster and promote health, comfort, recreation and sanitary conditions for the public, and unless specifically limited to certain classes of persons or to citizens of the Village itself such benefit extends to the public generally.' The court there discussed the case of *Roumbos v. City of Chicago*, 332 Ill. 70.

"Counsel for the City, in its brief, cite the case of *Consumers Co. v. City of Chicago*, 313 Ill. 408, and many other authorities and contend that the *Consumers* case is controlling here. In that case a bill was filed by a taxpayer against the City and its officials to restrain the purchase of a tract of land to be used by the City as a dumping ground for garbage and other waste matter; and it was contended that a city ordinance which authorized the purchase of the property was invalid and that the City was limited by certain acts of the legislature. The question of the liability of a city for the negligence of its employees in the street cleaning department was not considered.

"In a number of jurisdictions it has been held that the cleaning or sprinkling of streets or the removal of garbage is a corporate function to which the benefit to the public health is a mere incident, and that the municipality is liable for the torts of its employees engaged in such work. *City of Denver v. Porter*, 126 Fed. (C. C. A.) 288; *City of Pass Christian v. Fernandez*, 100 Miss. 76; *Missano v. Mayor of New York*, 160 N. Y. 123; *Silverman v. City of New York*, 114 N. Y. S. 59; *Quill v. New York*, 36 N. Y. App. Div. 476, 55 N. Y. S. 889; *Flannagan v. Bloomington*, 156 Ill. App. 162; *Ostrom v. San Antonio*, 94 Tex. 523, 62 S. W. 909; *Denver v. Maurer*, 47 Colo. 209, 168 Pac. 857.

"There are authorities holding to the contrary on the theory that cleaning streets and the removal of

garbage are health measures and are therefore governmental. But, so far as we are advised, the collection and removal of garbage even as a health measure has never been adopted as a function of the general government. If a State does not owe the duty to the public to remove garbage, it is not clear how a municipality can be its agent exercising the delegated powers of the State in its performance. In the cases just cited it is held that the removal of garbage is directly for the benefit of the city's residents in which the State, if at all, has only an indirect interest—a secondary consideration. We think this latter view is in accordance with common sense and sound reasoning and in line with the authorities of our own State, some of which are *Johnston v. City of Chicago,* 258 Ill. 494; *Bedtke v. City of Chicago,* 240 Ill. App. 493—certiorari denied by the Supreme Court, 241 Ill. App. XV—and *Roumbos v. City of Chicago,* 332 Ill. 70.''

In *Roumbos v. City of Chicago,* 332 Ill. 70, where it was urged by the city that the cleaning of its streets was a governmental function, but it was nevertheless held liable for the negligence of one of its street cleaners, the court, in addition to that portion of the opinion quoted in *Wasilevitsky v. City of Chicago, supra,* used the following pertinent language at pp. 82, 83–4:

''It is argued that the city was acting under the police power for the preservation of the public health by causing the streets to be cleaned. . . . The United States circuit court of appeals for the eighth circuit, in answer to the same argument, said: 'In almost all affairs of purely local concern some indirect relation may be traced to a matter of health, safety, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature the city cannot escape responsibility for its careful performance because it may in some general way also relate to a function of government. Thus,

from very early times the maintenance of highways has been of general interest. Nevertheless the overwhelming weight of authority is to the effect that the superintendence and care of the streets and alleys of a city, and all that directly pertains thereto, are peculiarly in the class of municipal duties for the neglect of which the city, in its corporate character, is liable.' (*City of Denver v. Porter,* 126 Fed. 288.) . . .

"It is argued that the great weight of authority in the decisions of the courts of final jurisdiction in other States is contrary to the conclusion we have reached. We have not overlooked or failed to consider those decisions. Those denying the liability of the city are more numerous than those to the contrary, but in our judgment the view which we have expressed is sustained not only by our own decisions but by the better reason and is more just in its operation than the other view." (See, also, *Hanrahan v. City of Chicago,* 289 Ill. 400; *Browning v. City of Springfield,* 17 Ill. 143; *City of Lacon v. Page,* 48 Ill. 499; *Bedtke v. City of Chicago,* 240 Ill. App. 493.)

We are not going to attempt within the confines of this opinion to discuss at length the authorities of the various jurisdictions pro and con on this question, but from our examination and consideration of them we find it invariably true that where it is held that a city acts in a corporate capacity in the cleaning of its streets, it is likewise held that garbage and ash removal and disposition is a corporate function as distinguished from a governmental duty. Our foremost authors and text writers in their classification of subjects for treatment couple the removal of garbage with the cleaning of streets. (14 A. L. R. 1473; 43 C. J. sec. 1750; McQuillan Mun. Corps. (2d ed.), vol. 1, sec. 339, subsec. 4; Dillon Mun. Corps. 5th ed. vol. 4, sec. 1662.)

We can perceive no distinction in principle or in the character of the work between services rendered by the city of Chicago in cleaning its streets and alleys and

collecting and disposing of its garbage. While the protection of health has always been a governmental function, the removal and disposition of garbage has never been included within its sphere except as an incident thereto. In so far as we know, government as an attribute of its sovereignty never assumed the removal and disposition of garbage throughout the State at large. Such always has been and on farms and in the sparsely settled communities of the State still is essentially and primarily a work that is performed by private citizens. However, as more populous centers developed, it became impractical in most cases for private citizens to properly attend to this function and it became necessary for the municipalities to assume it on account of the complexity of life and conditions peculiar to such municipalities.

It is clear upon principle and authority that the city of Chicago in the collection and removal of the garbage of its citizens acts in the discharge of a special power granted it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental function when it acts as a sovereign, and the fact that the discharge of this duty might incidentally benefit the public health does not make the removal of the garbage a public function. In considering this question in *City of Denver v. Porter,* 126 Fed. 288, the United States Circuit Court of Appeals said at p. 294:

"We are of the opinion that in the case before us the removal of the waste and refuse from the alleys of the city in the city carts, the deposit thereof upon the dumping grounds near Porter's premises, and the supervision of such work and of the dump itself were of local or municipal concern, and that the officers and employees of the health department of the city, in the discharge of their duties in connection with such work and supervision, were acting as the representatives of the city, for whose negligent acts or omissions it would

be liable. . . . The dump was under the exclusive control of those officers, and they represented the local or corporate interests of the city rather than the state in its sovereign capacity.''

In the *City of Pass Christian v. Fernandez,* 100 Miss. 76, where a four-year-old child was run over and injured by a city cart used for hauling trash and dirt, the court used this language at pp. 81 and 82:

''The idea that a driver of a city cart, engaged in hauling trash and dirt for the city, is engaged in a 'governmental function' in any sense in which the word is used in the law, requires a stretch of the imagination that is beyond our power to make. . . .

''The public or governmental duties of a city are those given by the state to the city as a part of the state's sovereignty, to be exercised by the city for the benefit of the whole public, living both in and out of the corporate limits. . . . The use of the cart in hauling dirt or trash for the city is for no governmental purpose, as connected in any way with the sovereign duty of the state. . . . But the hauling of dirt and trash is for the use and advantage of the city in its corporate capacity, is a corporate duty, and the city is liable for all damage done by any officer or agent so employed.''

The city of Chicago being in the exercise of a purely private or corporate function in collecting and removing garbage, and the negligence of the driver of its truck with the attached garbage laden trailers having been shown to be the sole cause of the accident, plaintiff is clearly entitled to recover, provided notice of her accident and her claim thereon given to the officers of the city was in substantial compliance with the statutory requirements.

The only defect claimed in the notice is that it gave the address of the attending physician as 6328 Sheridan road when his correct address was 6325 Sheridan road.

The attending physician, Dr. George Mueller, was the surgeon in chief of St. Mary of Nazareth Hospital, and a man of considerable repute in the city of Chicago, having practiced medicine and surgery here for more than 40 years. The purpose of the notice is not only to enable the city to intelligently investigate the alleged claim, but that it may prepare its defense thereto. (*Reichert v. City of Chicago,* 169 Ill. App. 493.) While it has been repeatedly held that the notice is mandatory and a condition precedent to recovery and that it must specify "the name and address of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, and the name and address of the attending physician (if any)," it has also been held that "it was not intended that such a notice should serve to entrap the plaintiff who had a meritorious cause of action if it was sufficiently definite." (*Reule v. City of Chicago,* 268 Ill. App. 266.)

In *McComb v. City of Chicago,* 263 Ill. 510, where the question of substantial compliance was raised, the court said at pp. 512–514:

"It will be observed the notice stated the injury received by plaintiff was 'at or near the corner of Thirty-ninth street and Campbell avenue.' It does not specifically state which corner, and appellant insists the notice is too uncertain and indefinite as to the place of the accident to be a substantial compliance with the statute. It must be admitted that in this respect the notice was crudely and carelessly prepared, but if, considering the whole notice together, it gives sufficient information to the city authorities to enable them, by the exercise of reasonable intelligence and diligence, to locate the place of the injury and ascertain the conditions alleged to have existed which caused it, it is sufficient, according to the weight of the authorities, to serve the purpose for which it was required by the statute to be given. No particular form of notice is required by the

statute. Statutes similar to ours are in force in many States of the Union, and the sufficiency of notices given under such statutes as to the place of the injury has frequently been passed upon by the courts of other States. In *Ellis v. City of Seattle,* 92 Pac. Rep. 431, the notice stated the injury occurred by plaintiff driving in a hole on the west side of a street. The proof showed the hole was on the east side of the street. The street was forty-six feet wide, and the officials of the city testified they had no knowledge of any defective condition of the east side of the street at the time of the injury. The court held the requirements of the notice should receive a liberal construction; that the purpose of it was to enable the officers of the city to locate the place of the injury with a view of preparing a defense if it was thought a defense should be made, and that if the notice directed the attention of the officers with reasonable certainty to the place of the accident the requirements of the statute were met. The court said: 'It was not intended that the terms of the notice should be used as a stumbling block or pitfall to prevent recovery by meritorious claimants.' The notice was held sufficient. . . .

"We think the case comes within the rule announced in *Carr v. Ashland,* 62 N. H. 665. In that case the court said: 'If the statement so designates the place that the officers of the town, being men of common understanding and intelligence, can by the exercise of reasonable diligence, and without other information from the plaintiff, find the exact place where it is claimed the damage was received, it is in this respect sufficient, because it fully answers the purpose of the statute.' "

In *Isaacson v. City of Chicago,* 240 Ill. App. 659 (abst.), where the notice gave the address of the attending physician as 1301 North Western avenue, and plaintiff testified that at the time she received her injuries his address was 1300 North Western avenue, it

was held adequate. In *Schweer v. City of Chicago Heights,* 168 Ill. App. 52, where the notice read "the name of the attending physician is Dr. F. A. Walls, with offices above Bradley's Drug Store on the corner of Illinois Street and West End Avenue in the City of Chicago Heights, Illinois," it was held sufficient. In *McComb v. City of Chicago, supra,* where the notice stated that the plaintiff was taken in charge by the police of the city of Chicago immediately after the accident and removed in a patrol wagon to the Cook County Hospital and that he was unable to give the name and address of the physician who treated him, the notice was held to be sufficient. In *Pickens v. City of Kankakee,* 200 Ill. App. 547 (abst.), it was held that the statutory notice filed with the city attorney and city clerk was sufficient (although it did not contain the address of the attending physician), where it appeared that such physician also held the position of city physician. The court said that it must be assumed that the residence of such physician was known to the city officers and that by the exercise of reasonable diligence they could ascertain any fact for which resort to the attending physician was necessary.

In all jurisdictions where similar statutes as to the notice to municipalities of claims on account of personal injuries are in force, they have been uniformly construed liberally, and substantial compliance has been held sufficient. The attending physician in this case was a well known practitioner in the city of Chicago, whose correct address was within three street numbers of the address stated in the notice and almost directly across the street from same. We think that the officers and investigators of the city of Chicago being men of common intelligence and understanding could have by the exercise of reasonable diligence and without further information from plaintiff ascertained the doctor's correct address, and, this being so, the no-

tice was sufficient in that it fully answered the purpose of the statute.

For the reasons stated herein the judgment of the circuit court is affirmed.

*Affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.