WATSON v. SCHOOL DISTRICT OF THE CITY OF BAY CITY.

SCHOOLS AND SCHOOL DISTRICTS—TORT LIABILITY—PAID PATRON AT
FOOTBALL GAME—EQUALLY DIVIDED COURT.

Judgment for defendant school district notwithstanding ver-
dict for plaintiff, administratrix of estate of deceased paid
patron at high school night football game, for fatal injuries
sustained when she fell into unlighted ramp is affirmed by
an equally divided court.

Appeal from Bay; Liebrand (Karl K.), J. Sub-
mitted October 13, 1948. (Docket No. 8, Calendar
No. 44,082.) Decided February 28, 1949. Rehearing
denied April 14, 1949.

Case by Honore Watson, administratrix of the es-
tate of Carolyn Honore Watson, deceased, against
School District of the City of Bay City for fatal in-
juries sustained when decedent fell into a ramp on an
athletic field. Verdict for plaintiff. Judgment for
defendant *non obstante veredicto*. Plaintiff appeals.
Affirmed by an equally divided court.

*Martin & van Benschoten,* for plaintiff.

*Gilbert W. Hand (William B. Henry,* of counsel),
for defendant.

BUSHNELL, J. *(for reversal).* This is an appeal by
plaintiff Honore Watson, administratrix of the es-
tate of Carolyn Honore Watson, deceased, from a

---

* Continued from Volume 323.

REFERENCES FOR POINTS IN HEADNOTES
3 Am. Jur., Appeal and Error, § 1160.

judgment *non obstante veredicto* in favor of the defendant school district of the city of Bay City, a jury having rendered a verdict in favor of plaintiff for $10,000.

On the evening of October 26, 1945, decedent, then 15 years old and a student at the T. L. Handy Junior High School in Bay City, in company with her younger brother and another boy, attended a football game between the Midland High School and the Bay City Central High School in the latter's stadium. She paid an admission charge in order to attend this game. While there she met a girl friend, Joan Downer, who had accompanied her friend, James Dobson, a member of the high school band. Carolyn was invited to ride home with them. Upon leaving the stadium "about 10 minutes before the game was completely over," the two girls walked to a parking lot on the west side of the school premises, where they waited in Dobson's car for him. The parking lot was not lighted, although there were two street lights in the vicinity, and the Kleig lights in the nearby stadium threw a diffused light over the area. This lot has a black cinder top and there is a ramp about 80 feet long, 15½ feet wide, and over 11 feet in depth at the deepest end, running from the basement of the warehouse building of the high school up to the ground level. A low concrete wall, which is level with the parking surface at the entrance to this ramp, extends on either side towards the building, with an average height of about 18 inches. The testimony shows that the ramp is protected by 8 or 10 posts made of 6-inch tubes filled with concrete. "They are in front of the ramp and along the west side, connecting with the wall, and their purpose is to prevent anybody from driving down there." The testimony, however, does not indicate that there is any rail above the retaining wall to protect pedestrians. Dobson's car was parked with its front wheels

against the west side wall of the ramp with other cars parked closely on either side.

When the game ended, there was considerable cheering and Carolyn, who was a cheer leader in the Handy Junior High School, suggested to Joan that they get out of the car and help the boys cheer. Because of the proximity of other cars the door to the Dobson car would not open wide and Carolyn, while stepping out and attempting to walk around the car, fell into the concrete ramp and suffered an injury to her spinal column. She never recovered from the total paralysis that followed and, after a lingering and painful illness, died some 8 months later.

Carolyn's administratrix based her right to recover against the school district on its negligence in failing to properly light and safeguard the ramp, the maintenance of a dangerous nuisance upon its premises, and the breach of its implied contract in failing to provide Carolyn with a "safe place to travel" while she was a paid attendant at the football contest upon defendant's premises.

The school district asserted its immunity from liability under each of the three counts of plaintiff's declaration, on the ground that it is a quasi municipal corporation and an agency of the State; that there was no evidence of its negligence or that of its employees; that Carolyn was guilty of contributory negligence as a matter of law; and that the parking lot upon which she was injured, although on the school premises, is not connected with nor a part of the athletic field to which Carolyn and other members of the public had been invited.

The trial court held that Carolyn's contributory negligence, if any, was a question of fact for the jury, and that defendant's immunity from liability was solely a question of law. The remaining issues were submitted to the jury, with decision reserved on de-

fendant's motion for a directed verdict at the close of the proofs.

The following questions were submitted to the jury:

"1. Did the defendant know the condition of its parking lot located on the northwest portion of its premises?

"Answer: Yes.

"2. Did the defendant have the area of its parking lot in the northwest portion of its premises in a reasonably fit and proper condition for the use to which it was put on October 26, 1945?

"Answer: No."

Defendant is a third-class school district and its powers and duties are enumerated in section 15 of chapter 6 of part 1 of Act No. 319, Pub. Acts 1927, as amended* (2 Comp. Laws 1929, § 7233 [Comp. Laws Supp. 1940, § 7233, Stat. Ann. 1946 Cum. Supp. § 15.195]). Such a school district is given power to "locate, acquire, purchase or lease, in the name of the district, such site or sites * * * for * . * * athletic fields and playgrounds as may be necessary; to purchase, lease, acquire, erect or build and equip such buildings for * * * athletic fields and playgrounds as may be necessary."

Section 5 of chapter 20 of the school code † (2 Comp. Laws 1929, § 7566 [Stat. Ann. § 15.606]) places the control of interscholastic athletic activities in the superintendent of public instruction. Such activities are conducted under rules promulgated by the State superintendent in a handbook entitled, "Michigan High School Athletic Association," a copy of which was produced as an exhibit.

The testimony shows that atheletic contests, particularly football games, cannot be conducted with-

---

* See 2 Comp. Laws 1948, § 346.15.—REPORTER.
† 2 Comp. Laws 1948, § 370.5.—REPORTER.

out limitation upon attendance by means of an admission charge, the proceeds of which are used to defray the expenses of visiting teams as well as home teams; surpluses if any over the expense of operation of football contests are used to promote other school athletic activities.

The general public was invited to the football game in question through newspaper and other advertising, and everyone in attendance, except the participants, school employees and members of the school band were required to pay for their admissions. A Federal amusement tax was paid on such receipts. Guards patrolled the athletic field to prevent entrance by anyone other than those having tickets; teachers were employed as ticket takers and athletic assistants, for which they were given additional pay; football coaches, scouts, and business managers were employed, and if otherwise used by the school district, were paid additional sums for such services.

The Midland-Bay City game produced a total of cash receipts amounting to $1,225.79, direct costs were $275.01, and the surplus of about $950 was deposited in the general fund of the school district. Defendant contends that such athletic enterprises are primarily a part of the physical education program of the school and that admission charges are only incidental thereto, and that such football contests are not, therefore, commercial in nature. Plaintiff argues that those who are not students or otherwise connected with the school, such as this decedent, are not benefited by its physical education program and that their only interest is to attend a football contest; and she argues that the facts of the case show a commercial operation for profit which wholly removes the school district while engaged in such operation from the protection of the defense of governmental immunity.

This highly debated and controversial question of governmental immunity has been the subject of much litigation. 160 A. L. R., beginning at page 7, contains more than several hundred pages of annotated cases on the subject of the tort liability of public schools and institutions of higher learning. There follow almost 100 pages more of annotations on the subject of the tort liability of private schools and institutions of higher learning.

This Court has spoken on the subject in a number of instances, of which the following are representative: *Daniels* v. *Board of Education of the City of Grand Rapids,* 191 Mich. 339 (L. R. A.1916F, 468), and *Daszkiewicz* v. *Detroit Board of Education,* 301 Mich. 212.

Throwing light on the subject of governmental immunity are decisions of this Court with respect to municipalities, counties and other governmental agencies, such as: *Hodgins* v. *Bay City,* 156 Mich. 687 (132 Am. St. Rep. 546); *Gunther* v. *Board of County Road Commissioners of Cheboygan County,* 225 Mich. 619; *Foss* v. *City of Lansing,* 237 Mich. 633 (52 A. L. R. 185); *Matthews* v. *City of Detroit,* 291 Mich. 161; and *Mead* v. *Michigan Public Service Commission,* 303 Mich. 168.

The precise question involved in the instant case is controlled by *Foss* v. *City of Lansing, supra.* Plaintiff in that case was injured by a city garbage truck, which she claimed, while being operated in a negligent manner, ran into her automobile, resulting in her injury. The cost of collecting and disposing of garbage in the city of Lansing was paid from the general fund, but the then city ordinance required the city to provide garbage cans or other containers for which the superintendent of garbage collected in advance from the users of such cans $1 per fiscal year. Garbage so collected was conveyed to a farm

where it was fed to pigs which were fattened and sold by the city at a profit.

The city defended on the ground that, in performing this governmental function, it was not liable for the negligent acts of its servants. The trial judge agreed with this view and directed a verdict for the city.

On appeal, judgment was reversed and a new trial granted, under the authority of *Hodgins* v. *Bay City, supra,* the Court saying:

"Whatever the holdings may be elsewhere, we are of the opinion that the rule in Michigan is that, if a municipality is engaged in a governmental work with an incidental profit, it is liable the same as a private corporation would be."

This rule was applied in *City of Bay City* v. *State Board of Tax Administration,* 292 Mich. 241, 251. See, also, *Miller* v. *Manistee County Board of Road Commissioners,* 297 Mich. 487, 499 (136 A. L. R. 575), overruled in *Mead* v. *Michigan Public Service Commission, supra.*

Defendant argues that it is a statutory State agency possessing only governmental powers, and that, on the contrary, municipalities possess both governmental and proprietary powers. It also argues that, in any event, the receipt by it of paid admissions incidental to athletic contests is not the exercise of proprietary powers, and, hence, the *Foss Case* is not applicable to school districts. The weakness in defendant's argument is that in the *Foss Case* the city, while performing a governmental function, received incidental profits in connection therewith. In the instant case, admitting for the sake of argument that the school district was performing a governmental function as prescribed by statute and the regulations of the State superintendent of public instruction, nevertheless it, too, received an incidental profit from

the exercise of such powers. Both were performing governmental functions, and, hence, the rule in the *Foss Case,* where a municipality was involved, should be held equally applicable in the instant case where a school district is involved. Therefore, we hold that such a rule pertaining to municipalities is also applicable to school districts.

The judgment entered *non obstante veredicto* should be reversed and one should be entered in accordance with the verdict of the jury.

We do not deem it necessary to elaborate on questions of negligence. In the absence of governmental immunity, such questions, under the circumstances in this case, are ones of fact for the jury. We agree with the trial judge that the question of "nuisance" is not involved.

The judgment should be reversed and the cause be remanded for entry of a judgment in accordance with the verdict of the jury, with costs of both courts to plaintiff.

Sharpe, C. J., and Boyles and Reid, JJ., concurred with Bushnell, J.

Dethmers, J. (*for affirmance*). The judgment *non obstante veredicto* in favor of defendant should be affirmed.

The facts are sufficiently set forth in Mr. Justice Bushnell's opinion to obviate their restatement. As therein indicated, plaintiff seeks to predicate liability on 3 grounds: (1) negligence; (2) public nuisance; (3) breach of implied contract. We consider these seriatim.

In the absence of a statute to the contrary, is the defense of "sovereign immunity" available to a municipal corporation in an action against it for damages resulting from the negligent performance of one of its functions by its agents or employees?

Plaintiff properly contends that the answer is determined by the test of whether the function involved is a governmental function or a proprietary function. A few of the cases in which that defense has been upheld, as relates to governmental function, are *Whitehead* v. *Detroit Board of Education,* 139 Mich. 490; *Brink* v. *City of Grand Rapids,* 144 Mich. 472; *Daniels* v. *Grand Rapids Board of Education,* 191 Mich. 339 (L. R. A. 1916F, 468); *Heino* v. *City of Grand Rapids,* 202 Mich. 363 (L. R. A. 1918F, 528); *Gunther* v. *Cheboygan County Road Commissioners,* 225 Mich. 619; *Tzatzken* v. *City of Detroit,* 226 Mich. 603; *Butler* v. *City of Grand Rapids,* 273 Mich. 674; *McDonell* v. *Brozo,* 285 Mich. 38. When the function has been held to be proprietary, "sovereign immunity" has been held to be no defense. *Hodgins* v. *Bay City,* 156 Mich. 687 (132 Am. St. Rep. 546); *Sykes* v. *Village of Portland,* 177 Mich. 290; *Borski* v. *City of Wakefield,* 239 Mich. 656; *Bathke* v. *City of Traverse City,* 308 Mich. 1.

Defendant is a third-class school district under Act No. 319, part 1, chap. 6, § 2, Pub. Acts 1927, as amended [1] (2 Comp. Laws 1929, § 7220 [Stat. Ann. § 15.182]). That act authorizes the board of education to acquire sites for athletic fields and to build and equip buildings thereon (2 Comp. Laws 1929, § 7233 [2] [Stat. Ann. § 15.195]). The act requires courses in health and physical education in all public schools (2 Comp. Laws 1929, § 7562 [3] [Stat. Ann. § 15.602]) and requires the superintendent of public instruction to prepare such courses for the public schools and gives him supervision over their interscholastic athletic activities (2 Comp. Laws 1929, §§ 7565, 7566 [4] [Stat. Ann. §§ 15.605, 15.606]). Thus

[1] 2 Comp. Laws 1948, § 346.2.—REPORTER.
[2] See 2 Comp. Laws 1948, § 346.15.—REPORTER.
[3] 2 Comp. Laws 1948, § 370.1.—REPORTER.
[4] 2 Comp. Laws 1948, §§ 370.4, 370.5.—REPORTER.

the public schools are charged with responsibility for physical education and the duty of training bodies as well as minds, and the playing of games and interscholastic athletic contests are made a part of the educational program of the schools. As was said in *Rhoades* v. *School District No. 9, Roosevelt County,* 115 Mont. 352 (142 Pac. [2d] 890, 160 A. L. R. 1):

"It is a matter of common knowledge that, in these schools, teams are selected to play against another team or teams of the same school; and that out of all of these are selected those who have acquired the greatest proficiency, and these compose the team which represents the school in contests with teams from other schools in the same general vicinity. In striving to make the first team there is great rivalry. A spirit of emulation is developed—all of which results in a more complete development of the physical powers. Undoubtedly, one of the elements which stimulate the contestants is that they will be afforded an opportunity of exhibiting their skill in games against their fellows of the same school or against teams of a different school. This, we think, is true, not alone as it pertains to physical sports, but the same may be said of debating teams, or of band concerts, or of exhibitions of the art department of a school. The fact that a band concert is held, or an exhibition of the work of those in the art department of the school had, brings better results in each of these departments. Therefore, we conclude that the basketball game in question was merely a part of the program of physical education of the school; and, consequently, the defendants were exercising governmental functions in connection therewith."

We can only conclude that the school function here involved was governmental, not proprietary. Plaintiff urges that the fact that an admission charge was paid by plaintiff's decedent and other spectators made the athletic event in question a proprietary rather than a governmental activity of the school.

In point is the following language from the *Rhoades Case:*

"Counsel for plaintiff emphasize the fact that an admission fee was charged and assert that because such charge was made, the activity is removed from the field of governmental functions. With that we cannot agree. Little if any difference does it make whether the admission fee thus collected went into the school fund, or whether the expense of conducting this game of basketball was paid from general taxation. The result is the same. It advances the purpose of physical education. That is a part of the governmental functions of the school district and of its trustees."

In this connection plaintiff cites such cases as *Hodgins* v. *Bay City, supra,* and *City of Bay City* v. *State Board of Tax Administration,* 292 Mich. 241, in which the municipality engages in the business of selling gas or electricity. In such instances it is the very nature of the function involved, not merely the revenue, that is determinative of its proprietary character. Here the football game was part of the school's physical education program. The function is inherently educational, a governmental function without doubt. See *Daszkiewicz* v. *Detroit Board of Education,* 301 Mich. 212, 221, and cases there cited. The incidental profit or revenue does not operate to change the character of that function. As this Court said in the *Daszkiewicz Case:*

"The collection of tuition from students and the admission of students only upon approval by a committee on admissions did not change defendant's operation of the medical school from a governmental function to that of a proprietary enterprise."

Plaintiff relies, however, as does Mr. Justice BUSHNELL's opinion, on language in the case of *Foss*

v. *City of Lansing*, 237 Mich. 633 (52 A. L. R. 185), as follows:

"We are of the opinion that the rule in Michigan is that, if a municipality is engaged in a governmental work with an incidental profit, it is liable the same as a private corporation would be."

In so saying, this Court seems to have qualified the rule that liability depends on whether the function is governmental or proprietary by adding a third classification; namely, governmental function with incidental profit, as to which it was held, in that case, that the defense of "sovereign immunity" does not apply. Decision was planted on *Rowland* v. *Kalamazoo County Superintendents of Poor*, 49 Mich. 553; *Ostrander* v. *City of Lansing*, 111 Mich. 693, and *Hodgins* v. *Bay City, supra*. Not one of these cases mentions, nor is it authority for, such third classification. In the *Rowland Case* liability was based on trespass and in the *Ostrander* and *Hodgins Cases* on holdings that the functions involved were proprietary. The *Foss Case* is cited in *Johnson* v. *Ontonagon County Road Commission*, 253 Mich. 465, in which it is said that the function involved in the *Foss Case* was proprietary. In the *Johnson Case* this Court, speaking in direct opposition to the language of the above quotation from the *Foss Case*, said:

"Municipal corporations and other governmental agencies when performing a purely governmental function do not lose their immunity from liability for its negligent performance merely because they derive an income therefrom, provided the income is only incidental to the main purpose of so functioning and aimed at covering the cost of the undertaking."

To the extent that the *Foss Case* is authority for the proposition that liability rests on municipal corporations in cases of governmental functions with an incidental profit or revenue, we declined to follow it

in the *Johnson Case* and decline to do so here. It should, to that extent, be deemed to be overruled. To plaintiff's claim of negligence the doctrine of "sovereign immunity" is a complete defense here.

Is defendant liable on a "public nuisance" theory? In this connection plaintiff cites *Ferris* v. *Detroit Board of Education,* 122 Mich. 315; *Kilts* v. *Kent County Board of Supervisors,* 162 Mich. 646; *Royston* v. *City of Charlotte,* 278 Mich. 255; and *McDonell* v. *Brozo, supra.* In the *Ferris Case* the plaintiff was injured by reason of snow and ice falling onto his property from the roof of an adjacent school building, which was so constructed that snow and ice must inevitably fall on plaintiff's property. This Court held defendant liable because "the injury is the result of the direct act or trespass of the municipality." In the *Kilts Case* the county was held not liable for plaintiff's injuries, sustained by reason of faulty construction of a scaffolding on a water tower on the county's premises on which plaintiff was working, this Court holding that there was no nuisance. In the *Royston Case* it was held that "the fact that the swing in question was knowingly maintained in a faulty and dangerous condition by the defendant city," with resultant injury to plaintiff's decedent, did not constitute a public nuisance and that the city was not liable. In the *McDonell Case* it was held that permitting school boys to run races on a public sidewalk incident to physical education program was not a nuisance for which liability could be imposed on the school district for injury sustained when pupil participating in race ran into pedestrian and knocked her down. Assuming, as plaintiff contends, that safety required the ramp in the instant case to be lighted or surrounded by warning signs or a higher wall or railing, the case is, in effect, no different than *Daniels* v. *Grand Rapids Board of Education, supra,* in which plaintiff fell over a 30-inch balustrade into

an 18-foot stairwell. This Court declined to accept plaintiff's contention, in that case, that the stairway, with its low railing enclosing the well, was a nuisance, and held the defendant not liable. That case is controlling of the nuisance theory in this case.

Plaintiff relies on *Scott* v. *University of Michigan Athletic Association,* 152 Mich. 684 (17 L. R. A. [N. S.] 234, 125 Am. St. Rep. 423, 15 Ann. Cas. 515), in support of the theory that when defendant sold plaintiff's decedent a ticket it impliedly promised her that its property was in a safe and fit condition for her use as a spectator. In the *Scott Case* the defendant was not a municipal corporation, but a voluntary association. As in the case of any individual or private corporation, it owed a duty to its patrons to furnish bleacher seats which were safe and in fit and proper condition for use. In accepting the price of admission and admitting the plaintiff in that case it impliedly promised to perform that duty. The implied contract in such cases arises out of the existing legal duty and amounts to an implied agreement to carry out that duty. In the instant case defendant was a municipal corporation, was not liable for the negligent acts of its agents or employees, and owed plaintiff no duty to prevent such negligence; hence, there was lacking the element from which a promise might be implied, thus distinguishing it from the *Scott Case.* In *Ford* v. *Independent School District,* 223 Iowa, 795 (273 N. W. 870), plaintiff, employed to paint defendant's schoolroom, was furnished by defendant with a faulty scaffold on which to work, which broke, causing plaintiff to fall and suffer injuries. Plaintiff contended that defendant had impliedly contracted to furnish him a safe place in which to work. In rejecting his theory the court said:

"It is our opinion that no contract or warranty binding defendant school district, as claimed by plaintiffs, can be implied from such alleged state of facts. These alleged acts of defendant, if they transpired, were things done by defendant through its representatives and agents in the performance of governmental functions for the negligent doing of which the school district could not be held to respond in damages. Contracts implied in law rest on legal fiction. They arise from law or natural equity. *When one is under legal obligation to perform a duty a promise may be inferred that the duty will be fulfilled. But in the case here there was no legal obligation owing by the school district to plaintiffs while defendant was engaged in performance of a governmental function. There having been no legal duty or obligation, there was nothing as to the doing of which the law would imply or infer a promise on part of defendant.* Our conclusion has support in other jurisdictions. In *Whitehead* v. *Detroit Board of Education,* 139 Mich. 490, plaintiff alleged: That he had been employed by the defendant school district to paint its school buildings, and that defendant owed plaintiff the duty to furnish a safe place in which to work and to furnish him tools and accommodations reasonably safe for the use expected of them; that defendant furnished plaintiff a guy hook that defendant knew was defective and as a result the scaffold on which plaintiff was working gave way causing him to fall and receive the injuries for which he claimed damages. A demurrer to the petition was sustained, the grounds being that there was no statutory liability, and further that in the State of Michigan municipal corporations are not liable for the negligence of their servants when in the exercise of duties in connection with a governmental capacity of the corporation unless made so by statute. On appeal it was held the demurrer was properly sustained."

The judgment *non obstante veredicto* is affirmed, with costs of both courts to the defendant.

NORTH, BUTZEL, and CARR, JJ., concurred with DETHMERS, J.