TOWN OF DOUGLAS, a municipal corporation, Appellant (Defendant below),

v.

Donald L. YORK and Donna L. York, Appellees (Plaintiffs below).

No. 3683.

Supreme Court of Wyoming.

Oct. 15, 1968.

Alfred G. Kaufman, Jr., Douglas, for appellant.

W. J. Wehrli, of Wehrli & Williams, Casper, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Mr. and Mrs. Donald L. York sought recovery of damages against the Town of Douglas for loss sustained to grazing land when a fire from the town's dump for disposal of refuse and garbage started a range fire. The fire was the one involved in Town of Douglas v. Nielsen, Wyo., 409 P.2d 240.

Insurance coverage was adequate to pay the judgment obtained in the *Nielsen* case and the question of governmental immunity was not involved. There was insurance enough to cover only part of the claim of the Yorks against the town. The amount available was paid to Yorks, and they sought the balance of their claim from the town.

The defense of governmental immunity was interposed on behalf of defendant-town, and the resulting issue tried to the district court was whether the garbage disposal activity of the town was a governmental or proprietary function. A trial to the court without a jury resulted in a judgment for plaintiffs against the town, and it has appealed.

There is in many jurisdictions a tendency to lean away from the allowance of governmental immunity to municipalities. This is pointed up in the recent case of Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45, 51–52, where damages were claimed for the negligent operation of a city garbage truck. The Arkansas Supreme Court rejected the rule of *stare decisis* and said the test is whether it is more important that the matter remain settled than that it be settled correctly.

We deem it unnecessary, however, to disturb the rule of *stare decisis*. Our court has not adopted any change in its attitude on governmental immunity, and we find in this jurisdiction ample *stare decisis* authority for upholding the judgment against the Town of Douglas.

The case at hand is different from any previously dealt with by our court, in that the Town of Douglas charges its residents for the removal and disposal of all refuse and garbage. We find ample authority for the proposition that when a municipality charges a fee or receives compensation for collection and disposal of refuse and garbage, it is exercising a proprietary function.

In order to avoid the impact of this authority, it has been suggested the fee charged by Douglas is for collection of refuse and that no fee is charged for disposing of it after it is collected. It is hard to believe that such a distinction would be seriously relied upon. Common sense

would tell us that if a town collects refuse it would have to get rid of it.

But be that as it may, suffice it to say a fair and reasonable reading of the Douglas garbage ordinance makes it abundantly clear residents are charged for the "removal and disposal" of refuse and garbage. Section XII of this ordinance is entitled REMOVAL. It specifies the town shall have direct "supervision" of the "removal and disposal" of all refuse and garbage. Section XIV prescribes fees for the inspection, *supervision* and *removal* of garbage and refuse "as defined herein."

Regardless of whether we apply the words "as defined herein" to "supervision" or to "removal," the definition includes "removal and disposal." Also, the title of the ordinance expressly states that it has to do with regulating the collection, removal and disposal of garbage and refuse.

But even if we disregard the meaning of words used in the garbage ordinance and say there is a distinction between collecting and disposing, we still have to deal with the argument that there is a stronger inclination of courts to impose liability for damages resulting from fire or negligence in disposing of collected refuse. City of Denver v. Porter, 8 Cir. (1903), 126 F. 288, 293–294; Schmidt v. City of Chicago, 284 Ill.App. 570, 1 N.E.2d 234, 235–239.

We are impressed with what Chief Justice Blume said in Town of Pine Bluffs v. State Board of Equalization, 79 Wyo. 262, 333 P.2d 700, 710–712.

In that case the city protested the assessment and valuation of municipally-owned electric plants. Justice Blume drew a distinction and said the furnishing of electricity for the purpose of lighting streets, directing traffic and providing lights for offices occupied by city offices was a governmental function, and hence municipally-owned electric plants were exempt from taxation insofar as they were for these purposes. On the other hand, the furnishing of electricity for sale to ratepayers was held to be a proprietary function, and that

portion of the value of plants devoted to this purpose was said to be taxable.

In Baumgardner v. City of Boston, 304 Mass. 100, 23 N.E.2d 121, 125, the court said a city is not liable for negligence in the conduct of strictly public functions, from which it receives no profit or advantage. Then it said:

"* * * On the other hand, a city or town is liable for negligence in the conduct of commercial enterprises voluntarily undertaken for profit or to benefit its corporate interests, although a public need is ultimately subserved. * * *"

To the same effect is Sloper v. City of Quincy, 301 Mass. 20, 16 N.E.2d 14, 17; and Foss v. City of Lansing, 237 Mich. 633, 212 N.W. 952, 953, 52 A.L.R. 185. The *Foss* case said the rule in Michigan is that if a municipality is engaged in governmental work with an incidental profit, it is liable the same as a private corporation would be.

The Michigan Supreme Court relied partly upon a former holding to the effect that a municipality is discharged from liability in furnishing electric service for lighting its public streets, public places and buildings; yet is liable for negligence in furnishing electricity to its inhabitants for remuneration—a holding quite similar to the holding of our court in Town of Pine Bluffs v. State Board of Equalization, supra.

In 18 McQuillin, Municipal Corporations (3rd Ed. Revised) § 53.29, p. 192, it is said the underlying test, for distinguishing governmental from corporate functions, is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability; if it is not, there is liability.

The case of Hutton v. Martin, 41 Wash. 2d 780, 252 P.2d 581, 584, involved an action for damages for wrongful death arising out of negligence on the part of the driver of a city garbage truck. The city was held to be liable because it was charging for its services. The court said whether the city actually made a profit was im-

material. It was operating a public utility and should be held liable for its torts.

This holding is in keeping with Justice Blume's logic in the *Pine Bluffs* case. In other words, the question is not whether the town makes a profit on its activity, but whether the services were rendered for compensation or gratuitously. It makes no difference whether the Town of Douglas comes out ahead, or takes some loss, or breaks even on its garbage disposal operation.

The case of Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 So. 457, 459, was the same kind of case we are dealing with here, where fire resulted from an incinerator being used by the city to dispose of refuse. The city was held liable in damages. The court referred to the city's "purely business relations" as distinguished from those that are governmental. The court said the city was performing a function often committed to private corporations or persons, with whom it may come in competition.

In Lore v. Town of Douglas, Wyo., 355 P.2d 367, 370, it was argued that, since the town made no separate charge to its inhabitants for sewer service, the maintenance would be a governmental function. Justice Parker, speaking for this court however, held sewer maintenance is a proprietary function.

The theory seems to be the same as it is with streets. The establishment and construction of streets and sewers is governmental, but we generally accept that the "maintenance" of sewers or streets is proprietary. See Chavez v. City of Laramie, Wyo., 389 P.2d 23, 25–26.

If maintenance of sewers and streets is proprietary, while the establishment and construction of such facilities are governmental, then it would follow that maintenance of an incinerator or dump for burning refuse would be proprietary, even if the establishment of such facility is governmental, or even if the collection of garbage and refuse is governmental.

In City of Denver v. Porter, 8 Cir. (1903), 126 F. 288, 293–294, it was stated the proper disposition of sewage of a city has even a more direct influence upon the health of inhibitants than does the disposition of refuse and garbage. Therefore, since it is generally held that in maintenance of its sewers a city acts ministerially, the court in the *Denver* case held the burning of trash was ministerial.

Even if no charge is made, there would be good authority for saying maintenance of a city dump (like maintenance of streets and sewers) is proprietary. We need not go that far, however. It is sufficient to say the added consideration of a charge being made makes it certain the defendant-town should be held liable for its negligence in maintaining its dump.

■ In any event, and whatever the holdings may be elsewhere, this jurisdiction is reasonably committed to the rule that, when a municipality is engaged in a municipal activity for which a charge is made, it is liable the same as a private corporation would be.

■ Inasmuch as this court has previously held the maintenance of a governmental facility for which a charge is made is proprietary and not governmental, we are constrained to say the Town of Douglas was performing a proprietary function when it disposed of garbage. The district court therefore correctly denied its immunity from tort liability.

The defendant-town has questioned the amount of damages allowed by the district court. However, no evidence was offered by defendant to contradict the testimony of plaintiffs. The judgment appears to be in harmony with undisputed evidence in the case, as far as damages are concerned, and no reversible error is noted with respect to damages.

Affirmed.

Mr. Justice Parker, concurring in the result.

Although I am unable to accept as tenable the reasons given for the controlling

opinion, the trial court's judgment was proper and should be affirmed on the basis that the situation disclosed constituted a nuisance and the pleadings of plaintiff were properly amended to conform to the proof.

It is well settled that the doctrine of governmental immunity for municipalities is inapplicable in situations wherein a nuisance exists. Grover v. City of Manhattan, 198 Kan. 307, 424 P.2d 256, 260; Steifer v. Kansas City, 175 Kan. 794, 267 P.2d 474, 478; 18 McQuillin, Municipal Corporations § 53.49 (3d ed.rev.); Annotation, 156 A.L.R. 714, 718. We recognized this fact in Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 713, 42 A.L.R. 245, observing that:

> "It is often said that a city, even though acting in a governmental capacity, cannot escape liability for creating or maintaining a nuisance. * * * This should not, perhaps, be classed as an exception to the rule exempting a city from liability for negligence, for common-law negligence does not enter into cases of true nuisance. The liability of municipal corporations for damages for nuisance seems generally to be recognized where property has been injured * * *."

In the present case, it cannot well be controverted that the manner in which the dump was maintained by the Town of Douglas prior to the time of the fire in question constituted a nuisance. The trial court held this obvious from the facts recited by Judge Harnsberger in Town of Douglas v. Neilsen, Wyo., 409 P.2d 240, 241, a companion case—the damage growing out of the same December 6, 1963, fire —wherein the opinion stated, inter alia, that on July 30, 1963, a fire from the dump had escaped and burned off probably 150 acres of range land before the fire department of the town got it under control; there were other prairie fires ignited from the dump; when complaint had been previously made to the mayor of the dangerous fire condition at the dump, his response was that if there was any damage the town would be responsible—other town officials making similar response; and the dump was located on high ground exposed to more wind than the lower ground. Accordingly, I concur in the result.